WALLER M. BOOTH v. F. E. STRIPPLEMAN.

(Case No. 726.)

1. ASSIGNMENT OF ERRORS.— By the indorsements on the transcript in a cause, removed by writ of error to the supreme court, it appeared to have been delivered to the attorney for the plaintiff in error one day before the date of the copy of the assignment of errors, which was attached to and by agreement of parties made a part of the transcript. *Held*, that the assignment of errors should be considered as filed in due time.

2. MANDAMUS — PRACTICE.— The order overruling a motion for peremptory *mandamus* was not such a judgment as concluded further inquiry into the grounds on which it was sought. Its only effect was to refuse the writ until a trial upon the merits, upon which the issuance of the writ would finally depend.

3. LAND CERTIFICATES — RETURN OF — CONSTITUTION CONSTRUED.— Section 4, art. 10, of the constitution of 1869 had no application to a certificate which had been presented to a surveyor, with a designation of the land on which he desired to locate it, when the surveyor refused to permit the location, and the owner, promptly resorting to the courts of the country, was unable, through the law's delays, to secure a survey and return of the certificate to the general land office before the 1st day of January, 1875.

ERROR from Colorado. Tried below before the Hon. Livingston Lindsay.

Nearly thirty years ago, on the 7th day of August, 1855, Booth instituted this suit against Strippleman, the then surveyor of the Colorado land district, to compel him to enter certain locations, to survey the land, and return the field notes to the general land office. Others who claimed under surrounding surveys were made defendants as claimants of the land sought to be appropriated by Booth. A trial was had and judgment rendered against Booth, from which he appealed, and that judgment was reversed and the cause remanded. See Booth *v.* Strippleman, 26 Tex., 436.

October 21, 1873, Thomas H. Duval, as administrator of Waller M. Booth, deceased, filed an amended petition making himself a party plaintiff, and also making H. Dittmar a defendant as the successor in office to Strippleman.

Dittmar answered by general demurrer, general denial, and specially denied some of the allegations in plaintiff's petition.

February 18, 1874, the plaintiff filed a motion for a peremptory *mandamus*, which was overruled by the court.

On June 21, 1875, all the defendants filed a general demurrer to the plaintiff's petition; and upon the same day the demurrer was sustained, and judgment final was rendered in favor of the defendants, to revise which a writ of error issued. The material questions presented by the record are discussed in the opinion.

*R. V. Cook*, for plaintiff in error, cited: Pasch. Dig., art. 5303, note 1149; Sherwood *v.* Fleming, 25 Tex. Sup., 428; Hamilton *v.* Avery, 20 Tex., 612; Howard *v.* Perry, 7 Tex., 259; Wyllie *v.* Wynne, 26 Tex., 43; Hamilton *v.* Menifee, 11 Tex., 719; Monroe *v.* Buchanan, 27 Tex., 246; Dartmouth College *v.* Woodward, 4 Wheat., 519; 12 N. Y., 209, and 4 Wheat., 253.

*George Quinan* and *Wells Thompson*, for defendant in error, cited: Edwards *v.* James, 13 Tex., 52; Patrick *v.* Nance, 26 Tex., 300; Holloway *v.* Holloway, 30 Tex., 164; Hart *v.* Gibbons, 14 Tex., 216; Cooley on Const. Lim., 73, 364; Angell on Lim., 14, 407; Greencastle *v.* Black, 5 Ind., 565; 2 Wheat., 25.

WATTS, J. COM. APP.— From the indorsements on the transcript it appears to have been delivered to the attorney for plaintiff in error February 24, 1876; while the copy of the assignment of errors attached to, and by the agreement of the parties made part of, the transcript, shows that the original was filed February 25, 1876. The point made is, that as the assignment of errors was not filed until after the transcript had been completed and delivered, it cannot be considered as such. The statute provides that the assignment of errors shall be filed with the clerk before the transcript of the record is taken from his office, and that a copy thereof shall be attached to and form a part of the record.

It may be assumed that the transcript was returned to the clerk on the 25th of February, 1876, when the assignment of errors was filed, and a copy thereof was attached as part of the record. No reason is perceived why this might not be done. If upon examina-

tion of the record it is found to be incomplete, the party would have the right to return it to the clerk for completion. The object of the statute is to secure the filing of the assignment of errors in the court below in such time as to give full notice to the opposite party of the grounds relied on for a reversal of the judgment, so as to enable him to contest such assignment in his brief.

Under the circumstances in this case, we are of the opinion that the assignment of errors ought to be considered as if filed in due time.

It is urged that the judgment of the court refusing the peremptory *mandamus* is a final judgment, and which, not being appealed from, concludes the whole matter in litigation. The court correctly overruled the motion for the peremptory *mandamus;* the court could not assume that the land certificates asserted as the foundation of the suit were valid, or that the plaintiff in error had not been negligent in prosecuting his rights. These and other matters involved are all subjects for investigation and determination, preliminary to the main question; that is, the awarding the writ of *mandamus.* But the order overruling the motion was not such a judgment as concluded and determined the issues in the case. The full effect of that order was to refuse the writ until a trial upon the merits could be had, thus leaving the question of the issuance of the writ to be determined by the result of the trial on the merits of the case.

Obviously, the court below sustained the general demurrer to the petition upon the ground that the certificates were then barred by the constitution of 1869. By section 4, article 10, of that constitution it is provided that "All unsatisfied genuine land certificates, now in existence, shall be surveyed and returned to the general land office by the 1st day of January, 1875, or be forever barred."

Without undertaking to determine whether or not Booth had acquired a vested right in the land, which was beyond the control of the constitutional convention, as that is not deemed necessary to a decision of the case, the question for consideration is as to whether the certificates upon which this suit is founded come within the spirit of that provision. The language is broad enough to include all certificates, and the rule that constitutional provisions cannot be construed away because inconvenient or unjust is fully recognized. But constitutions, like statutes, must be construed with reference to the subject matter, and with the view of arriving at and enforcing the intention of the convention. In such cases the object is to ascertain, and enforce the provision according to its spirit and intent.

Where the party had presented his genuine land certificates to the surveyor, with the designation of the land upon which he sought to locate the same, and the surveyor refused to make the location, all that he could do to secure the land, to which he was entitled by virtue of the certificates, would be for him to promptly resort to the courts of the country to enforce his rights. And it would be an astonishing doctrine to hold that, because of delays occasioned by the courts of the country, the party, although persistently urging his rights, should nevertheless lose them by the lapse of time, not occasioned by his fault or negligence. No one would anticipate such result as flowing from the spirit or intent of a provision in our organic law; and such a construction would only be given when the provision is not subject to some other reasonable and equitable construction.

The act of 1852 required that the field notes of all surveys should be returned to the general land office within a certain time after the location, and expressly declared that a failure to comply with the act in this respect rendered the location and survey *null* and *void*. There were no exceptions expressed.

In Ellis *v.* Batts, 26 Tex., 703, where the location and survey both preceded the passage of the act, and where the locator and surveyor had both been enjoined from sending up the field notes, and pending that suit the time had elapsed as fixed by the act, it was claimed that, as there were no exceptions in behalf of those who were litigating their rights to have the field notes returned to the land office, that therefore the location and survey were null and void. But it was held that the right of the party to the land, by virtue of his location and survey, was not forfeited by reason of his failure, on account of the litigation, to return his field notes within the time prescribed by the act.

In Edwards *v.* James, 13 Tex., 54, the surveyor refused to make the survey, and within the twelve months the locator brought suit against the surveyor to compel him to make the survey; and that suit was pending at the expiration of the twelve months, and hence the field notes were not returned to the general land office within the time prescribed; and it was urged that the location and survey were null and void. But it was there held that the location and survey were not null and void, and Justice Lipscomb, delivering the opinion of the court, said: " It is not believed to have been intended to embrace a case like the present, where there were legal impediments to the survey that could only be removed by an adjudication on the locator's right to have the land selected, located and sur-

veyed, etc. It would require express affirmative legislation to authorize the conclusion that such was the intention of the legislature."

Such has been the uniform construction given to the act of 1852 by our supreme court. But it is contended that there is a broad distinction as to the construction and effect to be given to a constitutional provision and that to be given to a legislative enactment. Perhaps such a distinction may exist where the provisions of the organic law relate to the division of powers among the departments, to the fundamental principles of government, and to prohibitions upon the exercise of legislative authority, and the like subjects.

But when the convention incorporates into the organic law matters pertaining to ordinary legislation, then the only distinction between them, which has reason for its foundation, is that the one is irrepealable, while the other, being enacted by the legislature, may ordinarily be repealed at will. The provision under consideration prescribes a rule of limitation, and was the result of the exercise of legislative power by the convention; and, therefore, the rules of construction applicable to other provisions of the statute of limitations are also applicable here.

Obviously, from the other provisions in article 10, it was deemed important by the convention that the residue of the public domain, after satisfying all land certificates theretofore issued, should be ascertained. That this object might be attained, the limitation of five years in which these certificates could be located was adopted. In other words, this was done to compel the owners to locate their certificates and return their field notes to the general land office.

Where the owner of the certificates is proceeding in the usual manner to locate them, and obtain a survey and return of the field notes as required, but he is prevented from accomplishing this by the persistent refusal of the agents of the state to enter the location and make the survey, and is compelled to resort to the courts of the country to secure his rights, under such circumstances it is not believed that the convention intended to bar the certificates pending such litigation. To so hold would be for the state to take advantage of her own wrong, perpetrated through her agent, the surveyor. To warrant such a conclusion it would require an affirmative declaration that such was the intention of the convention.

When this case was before the supreme court in 1862 (Booth v. Strippleman, 26 Tex., 440), it was held, as the case was then made by the evidence, that the land was not included in the former grants, and was therefore unappropriated public domain at the time Booth sought to appropriate it, and hence subject to his location. There-

fore, if the certificates by virtue of which he sought to appropriate the land were valid, then, as between him and the state, he would have the right to have his location and survey made, and his title perfected by issuance of the patent.

The complaint of the surveyor, that Booth in his life-time, and his administrator since his death, have not promptly urged and vigorously prosecuted the suit, is entitled to but little consideration. For after the decision of the supreme court on the former appeal, no good reason is perceived for a further refusal, upon the part of the surveyor, to enter the location, make the survey and return the field notes to the general land office, as he made no specific objection to the validity of the certificates.

As to the other parties, they seem to have asserted no other claim to the land than that it was included within the McLane and McNair grant; and that question was determined against them on the former appeal.

We conclude that the court erred in sustaining the demurrer to the plaintiff in error's petition, and in dismissing the cause, and therefore the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted March 8, 1884.]