

# THE ATTORNEY GENERAL
## OF TEXAS

December 9, 1988

JIM MATTOX
ATTORNEY GENERAL

Honorable Lloyd Criss                Opinion No. JM-991
Chairman
Committee on Labor and               Re: Taxation of a home-
  Employment Relations               stead occupied by a sur-
Texas House of Representatives       viving spouse  (RQ-1416)
P. O. Box 2910
Austin, Texas  78769

Dear Representative Criss:

You ask whether an amendment to article VIII, section 1-b, of the Texas Constitution is applicable only to homesteads occupied by surviving spouses whose husbands or wives died <u>after</u> the amendment took effect. The amendment limits the taxation of certain homesteads for school purposes.

Article VIII, section 1-b, is one of several constitutional provisions concerning homesteads. Article XVI, section 51, defines a homestead for purposes of exemption from forced sale, and section 50 of that article provides that the sale of a homestead cannot be forced except to satisfy purchase-money liens, improvement liens, or tax liens. Section 52 of article XVI specifies that upon the death of a spouse, the homestead property is not to be distributed among the heirs of the deceased so long as it is used as a homestead by the surviving spouse or, as permitted under court order, is used and occupied by the deceased's minor children.

Article VIII of the Texas Constitution deals with taxation and revenue. As amended in 1978, section 1 thereof requires that taxation be equal and uniform, and that all real property and tangible personal property in the state be taxed, except that it requires the exemption of certain household furnishings and permits the exemption of "personal property homestead."

Until 1932, the homestead was not excepted from the "equal and uniform" taxation requirement. <u>Lufkin v. City of Galveston</u>, 58 Tex. 545 (1883). Section 1-a was added to article VIII in that year and amended in 1933. As amended, the section provided that $3,000 of the assessed taxable

value of residential  homesteads should be  exempt from  all taxation  "for  state  purposes."   The  amendment  did  not authorize an exemption  from local taxes.   City of  Wichita Falls v. Cooper, 170 S.W.2d 777 (Tex. Civ. App. - Fort Worth 1943, writ ref'd).

Fifteen years later, in  1948, section 1-a was  amended to abolish the levy  of state ad  valorem taxes for  general revenue purposes and to permit  counties to levy ad  valorem taxes on  property for  county  purposes "except  the  first Three Thousand Dollars ($3,000)  value of residential  home- steads."  Section 1-b was added to article VIII at the  same time to exempt $3,000 of  the assessed taxable value of  all residence  homesteads  "from  all  taxation  for  all  State purposes" (not merely for general revenue purposes).

Section 1-a of article VIII  has been amended only  one other time.  In 1973 it was amended to apply to "residential homesteads of married or  unmarried adults, male or  female, including those living  alone."  Section 1-b,  on the  other hand, has been amended five  times since 1948.  You  inquire only about the most recent amendment, but an appreciation of those that preceded it is useful to its understanding.

In 1972, section 1-b was divided into subsections,  and for the first time it was provided, in subsection (b),  that the governing body of any political subdivision could exempt by its own action "not  less than" $3,000  of the  assessed value of residence homesteads of persons 65 years of age  or older from all  ad valorem taxes  "thereafter levied by  the political subdivision."  See  S.J.R. No. 7,  62d Leg.,  4126 (1972); Attorney General Opinion H-9 (1973).  A year  later, section 1-b(b) was made  applicable to residence  homesteads "of married or  unmarried persons sixty-five  (65) years  of age or older,  including those living  alone."  See  S.J.R. No. 13, 63d Leg., 2469, at 2470 (1973).

An amendment adopted in 1978 changed section 1-b(b)  to include the homesteads  of certain disabled  persons and  to base the amount  of an  exemption upon  market value  rather than assessed value.  It also added subsections (c) and  (d) to the section.  See  H.J.R. No. 1, 65th  Leg., 2d C.S.,  54 (1978).  Subsection  (c) generally  exempted $5,000  of  the market value of residence homesteads "for general elementary and secondary school purposes"  and authorized the  legisla- ture to exempt up to  $10,000 of a homestead's market  value for disabled persons and persons aged 65 or older.   Subsec- tion (d) read:

> (d)   Except as otherwise provided by this subsection, if a person receives the residence homestead exemption prescribed by Subsection (c) of this section for homesteads of persons sixty-five (65) years of age or older, <u>the total amount of ad valorem taxes imposed on that homestead for general elementary and secondary public school purposes may not be increased while it remains the residence homestead of that person or that person's spouse who receives the exemption</u>. However, those taxes may be increased to the extent the value of the homestead is increased by improvements other than repairs or improvements made to comply with governmental requirements.   (Emphasis added.)

Another amendment adding subsection (e) to section 1-b was adopted in 1981.   It required any general homestead exemption granted by a political subdivision to be in the amount of at least $5,000.   <u>See</u> H.J.R.   No. 81, 67th Leg., 4222 (1981).

Finally, in 1987, subsection (d) of section 1-b (set out above) was amended by inserting a sentence reading:

> If a person sixty-five (65) years of age or older dies in a year in which the person received the exemption, the total amount of ad valorem taxes imposed on the homestead for general elementary and secondary public school purposes may not be increased while it remains the residence homestead of that person's surviving spouse if the spouse is fifty-five (55) years of age or older at the time of the person's death, subject to any exceptions provided by general law.

<u>See</u> H.J.R. No. 48, 70th Leg., 4124 (1987).   You have asked us to construe this 1987 amendment.

Amendments are made pursuant to article XVII, section 1, of the Texas Constitution.   In declaring the objective and meaning of amendments, courts should give the words their natural, obvious, and ordinary meaning as understood by the citizenry.   Amendments should be construed with reference to all other provisions of the constitution and -- with a view to giving every provision effect -- they should be construed in a way that will carry out the broad general

principles of government.  <u>State v. Clements</u>, 319 S.W.2d 450 (Tex. Civ. App. - Texarkana 1958, writ ref'd).

In arriving at the intent of the electorate and of the drafters, the primary focus must be upon the language used. <u>See</u> <u>Booth v. Strippleman</u>, 61 Tex. 378 (1884) (rules for constitutional construction analogous to rules for statutory construction); <u>Duval Corporation v. Sadler</u>, 407 S.W.2d 493 (Tex. 1966) (intent ascertained from language used and its legal context); 12 Tex. Jur.3d, <u>Constitutional Law</u> §§ 13-15. It is presumed that the words used were carefully selected. <u>Leander Independent School District v. Cedar Park Water Supply Corporation</u>, 479 S.W.2d 908 (Tex. 1972).

The initial portion of the 1987 amendment reads:

> If a person sixty-five (65) years of age or older <u>dies</u> . . .

This language connotes a future event, as does the entire constitutional passage. The final words of the provision decisively indicate that only deaths in the future are to trigger benefits that accrue

> if the spouse <u>is</u> fifty-five (55) years of age or older <u>at the time of the person's death</u>, subject to any exceptions provided by general law.   (Emphasis added.)

Tex. Const. art. XVII, § 1-b.

If the provision had been intended to embrace past events, the underscored word "is" would have been written "was". The use of the verb "is," together with the prepositional phrase "at the time of the person's death," imparts clearly a natural, obvious, and ordinary meaning that looks to future events.

Very great difficulties would accompany a different interpretation. If the word "is" in the foregoing sentence fragment were read "was," the amendment might mean that a widow who was fifty-five at the time her husband died in 1975 would receive the benefit of a freeze, but a widow, now sixty-three, who was only fifty years old when her husband died in the same year, would not.  The latter widow was not "fifty-five (55) years of age or older <u>at the time of the person's death</u>".  If the advantage of a "freeze" were available to either of them, would the taxes be "frozen" at

their level when the husband died in 1975?  Would the excess taxes collected in the interim have to be returned?

There are no appellate cases construing the constitutionally mandated "freeze," and only one attorney general opinion has dealt with it.  Attorney General Opinion MW-265 (1980) equated the effect of a section 1-b(b) tax freeze with a tax exemption but differentiated the two.  The opinion suggested that, absent constitutional authorization, both the freeze and the exemption would be violative of the "equal and uniform" command of article VIII, section 1, of the Texas Constitution.

Those who argue for an "expansive" interpretation of the freeze language (to cover deaths occurring before the constitutional amendment took effect) urge that the expansive construction should be chosen because it "is most fair to the greatest number of people."  However, that test leads to an opposite result.  Taxes are fairer for the most people when there are no tax exemptions at all.  Expanding exemptions does not expand fairness.  As we noted in Attorney General Opinion JM-612 (1986):

> The law does not favor tax exemptions, since they are the antithesis of equality and uniformity.  <u>Hilltop Village, Inc. v. Kerrville Independent School District</u>, 426 S.W.2d 943 (Tex. 1968).  Constitutional and statutory provisions creating them are to be construed narrowly with all doubts resolved against granting the exemption.  <u>City of Longview v. Markham-McRee Municipal Hospital</u>, 152 S.W.2d 1112 (Tex. 1941).

A residence may be liberally classified as the homestead of both spouses for other constitutional purposes, but the "over 65 exemption" has not been read broadly.  One spouse cannot claim the tax exemption if the constitution gives it only to the other spouse.  <u>Ripley v. Stephens</u>, 686 S.W.2d 757 (Tex. App. - Austin 1985, writ ref'd n.r.e.).

In <u>Ripley v. Stephens</u>, <u>supra</u>, a couple claimed a section 1-b homestead exemption.  The wife was over the age of 65 but the residence was owned as separate property by the husband (who was not yet 65).  Because the constitution authorized the legislature to define "residence homestead" for purposes of the section -- and it had done so by defining a residence homestead as property occupied "by an owner who qualifies for the exemption" -- the court said the

couple could not claim the exemption from taxes. The wife was not the owner of the property and the husband was not yet eligible for the exemption.

Shortly after the "over 65 homestead exemption" was added to the constitution, this office found it necessary to read into the constitutional language the same kind of Ripley v. Stephens restrictions later included by the legislature in its "residence homestead" definition. The interpretation was thought necessary in order to save the exemption from invalidity under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. See Attorney General Opinion H-9 (1973). That restrictive interpretation was thought necessary because, without it, the constitutional language would have been too broad.

In the case of the 1987 amendment, broadening the "freeze" provision to include past deaths would not make it less vulnerable to Equal Protection attacks. It would make entirely selective (and arbitrarily retroactive in its operation) the limitation that the surviving spouse must have been 55 years or more at the time of the death to enjoy the benefit.[1]

---

1. There are parallels between the "65 or older" homestead exemption of article VIII, section 1-b, and the "disabled veterans" homestead exemption allowed by section 2(b) of that article. In 1976, this office concluded in Attorney General Opinion H-894 that, as implemented by the legislature, constitutional permission to grant a veteran's surviving spouse and children an exemption equal to the exemption "to which the decedent was entitled at the time he died," Tex. Const. art. VIII, § 2(b) (emphasis added), was not limited to the families of those who died after the effective date of the statutory implementation, even though no veteran could have been "entitled" to an exemption before that time. Attorney General Opinion H-894 (1976); see Attorney General Opinion H-88 (1973).

In our opinion, Attorney General Opinion H-894 was wrongly decided. The only justification for the opinion's conclusion was:

To restrict the statutory exemption . . . only to
(Footnote Continued)

Attorney General Opinion H-9 said:

> The Fourteenth Amendment does not prohibit
> or prevent classification, provided classifi-
> cation is reasonable for  the purpose of  the
> legislation; is based on proper and  justifi-
> able distinctions, considering the purpose of
> the law; is not clearly arbitrary; and is not
> a subterfuge to shield  one class and  unduly
> burden another  or to  oppress unlawfully  in
> its administration.

Attorney General Opinion H-9 (1973), at 4.

This continues to be the  law.  See Western & Southern  Life
Insurance Co. v. State Board  of Equalization, 451 U.S.  648
(1981); Carrington  v. Rash,  380 U.S.  89 (1965);  16A  Am.
Jur.2d Constitutional Law § 746.  We are of the opinion that
the 1987 constitutional  amendment speaks prospectively  and
that its  limitation  of  taxation· on  exempted  homesteads
during the occupancy of surviving spouses is applicable only
if the non-surviving  spouse died after  the amendment  took
effect.

---

(Footnote Continued)
> survivors of  those disabled  veterans who  have  died
> since January  1,  1976, would  give [it]  negligible
> immediate effect. . . .

Attorney General Opinion H-894 (1976), at 2.

No appellate court has directly considered the H-894 conclu-
sion, but five years later in State v. American Legion  Post
No. 58, the court said:

> [E]xemptions granted by [statute] must be read in  the
> light of  Article VIII,  ˙sec. 2,  of the  Constitution
> since the  Constitution expressly makes null and  void
> all exemptions attempted thereunder by the legislature
> not authorized by the  Constitution.  If the  property
> comes within a statutory  exemption, it can be  exempt
> only because it is clearly embraced within the consti-
> tutional authorization.

611 S.W.2d 720,  723 (Tex.  Civ. App.  - El  Paso 1981,  no
writ).

## S U M M A R Y

The 1987 amendment to article VIII, section 1-b(d), of the Texas Constitution, that limits, for school purposes, the taxation of homesteads occupied by surviving spouses of persons entitled to "sixty-five years of age or older" exemptions applies only to spouses who survive persons dying after the constitutional amendment took effect.

Very truly yours

J I M    M A T T O X
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General