

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-75,898

**IN RE MATT JOHNSON, JUDGE OF THE 54TH DISTRICT COURT OF McLENNAN COUNTY, TEXAS, Relator**

**v.**

**THE TENTH JUDICIAL DISTRICT COURT OF APPEALS AT WACO, Respondent**

### ON PETITION FOR A WRIT OF MANDAMUS
### IN CAUSE NO. 10-07-00331-CR FROM THE
### TENTH COURT OF APPEALS AT WACO

PRICE, J., delivered the opinion of the Court in which WOMACK, JOHNSON, KEASLER, HERVEY andCOCHRAN, JJ., joined. KELLER, P.J., filed a dissenting opinion in which MEYERS and HOLCOMB, JJ., joined.

### O P I N I O N

In this mandamus proceeding, Matt Johnson, Judge of the 54th District Court of McLennan County (relator), seeks relief from an order entered by the Tenth Court of Appeals in Waco (respondent). In a mandamus proceeding below, the Tenth Court of Appeals

required Judge Johnson to vacate an order that he had entered directing the Texas Department of Criminal Justice (TDCJ) to withdraw funds from the inmate trust-fund account of Steven Frank Goad (real party in interest) and forward those funds to McLennan County in satisfaction of an assessment of costs for a pair of indecency with a child convictions Goad incurred in the 54th District Court in 2003.[1] Although such a withdrawal of funds is expressly authorized by Section 501.014(e) of the Texas Government Code,[2] the court of appeals nevertheless held, on the strength of its own earlier opinion in *In re Keeling*,[3] that Judge Johnson's order was "void" because the taking of the funds from Goad's inmate trust-fund account pursuant to that provision was accomplished without the due-process guarantees of prior notice and an opportunity to be heard. We granted Judge Johnson leave to file an application for writ of mandamus in this Court in order to determine whether the court of appeals abused its discretion to order that mandamus relief.

## FACTS AND PROCEDURAL POSTURE

In July of 2003, Goad pled guilty to two indictments charging him with indecency

---

[1] *See In re Steven Frank Goad*, 243 S.W.3d 858 (Tex. App.—Waco 2008).

[2] *See* TEX. GOV'T CODE § 501.014(e) ("On notification by a court, the department shall withdraw from an inmate's account any amount the inmate is ordered to pay by order of the court under this subsection. The department shall make a payment under this subsection as ordered by the court to either the court or the party specified in the court order. * * * The department shall make withdrawals and payments from an inmate's account under this subsection according to the following schedule of priorities: . . . (4) as payment in full for all orders for court fees and costs[.]").

[3] 227 S.W.3d 391 (Tex. App.—Waco 2007, no pet.).

with a child. Attached to each judgment was a bill of costs, assessing a total of $724.50 in court costs against Goad. More than three years later, in September of 2006, the trial court entered an order corresponding to each cause number directing TDCJ to pay to the McLennan County District Clerk, on a graduated schedule, monies from Goad's inmate trust-fund account in satisfaction of the judgment of court costs against him.[4] These orders expressly purported to be entered pursuant to Section 501.014(e) of the Government Code. Goad attempted to pursue an appeal of the trial court's orders, but when the court of appeals notified him that his appeal was subject to dismissal because his notice of appeal was not timely, he filed a motion to dismiss the appeal.

After next attempting unsuccessfully to persuade the trial court to rescind its orders and return his money, Goad filed an application for writ of mandamus with the court of appeals.[5] In his application he cited *In re Keeling* and an opinion of the Texarkana Court of Appeals in *Abdullah v. State*,[6] arguing that the taking of funds from his inmate trust-fund account to satisfy court costs amounted to a garnishment, and that, because the Rules of Civil Procedure that govern garnishment proceedings were not followed, which proceedings would

---

[4] Both the judgments in 2003 and the orders in 2006 were signed by Judge Johnson's predecessor in office, Judge George Allen.

[5] The court of appeals had original mandamus jurisdiction by virtue of TEX. CONST. art. V, § 6 and TEX. GOV'T CODE § 22.221(b)(1). Applicants are required to pursue the writ of mandamus, absent a compelling reason not to, in the courts of appeals before proceeding to this Court. *Padilla v. McDaniel, Judge, 203rd District Court*, 122 S.W.3d 805, 808 (Tex. Crim. App. 2003).

[6] 211 S.W.3d 938 (Tex. App.—Texarkana 2007, no pet.).

have afforded him with notice and an opportunity to be heard, he was denied procedural due process. The court of appeals agreed, and ordered Judge Johnson to rescind the Section 501.014 orders and return the monies that had been withdrawn from Goad's inmate trust-fund account, holding that the orders were "void" because Goad had been provided no prior notice or opportunity to be heard before they issued.[7]

Judge Johnson then filed his application for writ of mandamus in this Court, arguing that Goad received all the due process that he was due in the course of the criminal proceedings, and that further notice and opportunity to be heard is unnecessary following a formal assessment of costs in the judgments.[8] We filed and set Judge Johnson's application to decide whether the court of appeals abused its discretion in requiring him to rescind his orders to withdraw funds from Goad's inmate trust-fund account in satisfaction of court costs.[9] On further reflection, however, we hold that we lack mandamus jurisdiction and dismiss the writ application.

---

[7]

*In re Goad*, *supra*, at 859.

[8]

Judge Johnson cites *Endicott Johnson Corporation v. Encyclopedia Press, Inc.*, 266 U.S. 285 (1924), for this proposition.

[9]

Although this Court lacks jurisdiction to review the decisions of the courts of appeals in the exercise of their original jurisdiction via petitions for discretionary review, we can exercise our own original jurisdiction in a separate mandamus proceeding to determine whether a court of appeals has "clearly abused its discretion" in granting mandamus relief. *State ex rel. Young v. Sixth Court of Appeals*, 236 S.W.3d 207, 209 n.6 (Tex. Crim. App. 2007).

## CRIMINAL LAW MATTER?

The threshold question in any original mandamus proceeding is whether this Court has original jurisdiction to entertain relator's application for writ of mandamus. Under Article V, Section 5(c), of the Texas Constitution, this Court has jurisdiction to issue writs of mandamus "in criminal law matters."[10] Whether the instant proceeding involves a "criminal law matter" is, we think, a close question under our case law construing Article V, Section 5(c). For reasons we now develop, we think that the matter should ultimately be left to the appellate jurisdiction of the courts of appeals and the Texas Supreme Court. We therefore hold that it is not a "criminal law matter."

### This Court's "Criminal Law Matters" Jurisprudence

The closest analog to the present case in our "criminal law matter" jurisprudence is our opinion in *Curry v. Wilson*.[11] That case involved "a dispute over a district judge's authority to enforce an order which was mandated by" then-Article 26.05(e) of the Code of Criminal Procedure.[12] Article 26.05(e) authorized courts to order a defendant who can afford "to offset in part or in whole the costs of the legal services provided, including any expenses

---

[10]

    *See* TEX. CONST. Art. V, § 5(c) ("Subject to such regulations as may be prescribed by law, the Court of Criminal Appeals and the Judges thereof shall have the power to issues the writ of habeas corpus, and, in criminal law matters, the writs of mandamus, procedendo, prohibition, and certiorari.").

[11]

  853 S.W.2d 40 (Tex. Crim. App. 1993).

[12]

    *Id*. at 43.

and costs, . . . to pay the amount that it finds that the defendant is able to pay."[13]  The petitioner had been acquitted of the charges against him and argued that the trial court was without jurisdiction to enter an order under Article 26.05(e) following his acquittal.  In holding this to be a "criminal law matter," the Court quoted from our opinion in *Smith v. Flack*:[14]

> Undoubtedly, the enforcement of an order issued pursuant to a criminal law statute is a criminal law matter as much as the issuance of the order itself, even if it requires this Court to examine civil laws in the process.  Were it otherwise, this Court's power to decide criminal law matters would be seriously eroded or eliminated all together by the incidental presence of civil law matters.[15]

Although we held in *Smith v. Flack* that we have mandamus jurisdiction "when a criminal law is the subject of the litigation,"[16] we have elsewhere observed that this language "was not intended to be a definitive statement of the meaning of 'criminal law matters.'"[17]

The instant matter involves the enforceability of an order entered, not pursuant to a provision of the Penal Code or the Code of Criminal Procedure, but pursuant to Section 501.014(e) of the Government Code, which is not on its face "a criminal law statute."

---

[13] Former Article 26.05(e) has been amended and redesignated as TEX. CODE CRIM. PROC. art. 26.05(g).

[14] 728 S.W.2d 784 (Tex. Crim. App. 1987).

[15] *Id*. at 788-89.

[16] *Id*. at 788.

[17] *Lanford v. Fourteenth Court of Appeals*, 847 S.W.2d 581, 585 (Tex. Crim. App. 1993).

Although it certainly may apply to recover costs emanating from judgments in criminal prosecutions, Section 501.014(e) does not pertain exclusively, or even primarily, to such judgments, or even to the recovery of costs assessed in criminal (as opposed to civil) judgments. On its face, the statute provides for withdrawal of inmate funds for the payment of child support, civil fines, and court costs emanating from civil judgments against an inmate.[18] Indeed, resolution of the question presented by this mandamus application requires us to scrutinize no criminal-law statute. So, the question arises: Is this a "criminal law matter" that requires us, incidentally, to examine certain provisions of the civil law for resolution, or is it primarily a civil law matter that happens, incidentally, to emanate from a judgment in a criminal case, but is not otherwise related to criminal law at all?

## The Courts of Appeals Weigh In

The courts of appeals that have addressed this question are divided. Some have held

---

[18]

In order of priority, Section 501.014(e) mandates the withdrawal of funds from an inmate's account for the following purposes:

(1) as payment in full for all orders for child support;

(2) as payment in full for all orders for restitution;

(3) as payment in full for all orders for reimbursement of the Texas Department of Human Services for financial assistance provided for the child's health needs under Chapter 31, Human Resources Code, to a child of the inmate;

(4) as payment in full for all orders for court fees and costs;

(5) as payment in full for all orders for fines; and

(6) as payment in full for any other court order, judgment, or writ.

that it is a civil matter and therefore subject to direct appeal. Others have held that it is a criminal matter, and, as such, it is not appealable.

In *Abdullah v. State*, the Texarkana Court of Appeals entertained what it deemed "an unusual appeal" from an order withdrawing funds from an inmate account under Section 501.014(e).[19] Likening such an order to a turnover order,[20] or, alternatively, to a writ of garnishment,[21] the court of appeals determined that it was an appealable order.[22] Holding that what Section 501.014(e) essentially authorizes is a garnishment proceeding, the court of appeals reversed the trial court's order because the issuing court had failed to provide the notice and opportunity to be heard that is afforded to defendants in garnishment proceedings under the Texas Rules of Civil Procedure.[23]

But the Amarillo and Waco courts of appeals have held that an order to pay outstanding court costs pursuant to Section 501.014(e) is essentially criminal in nature. In *Gross v. State*,[24] the Amarillo court held that, because the attempted appeal from a Section

---

[19] 211 S.W.3d at 939.

[20] TEX. CIV. PRAC. REM. CODE § 31.002.

[21] TEX. CIV. PRAC. REM. CODE § 63.007.

[22] *Abdullah v. State*, *supra*, at 940-41 & n.5.

[23] *Id*. at 941-43, *citing* TEX. R. CIV. P. 657-79.

[24] ___ S.W.3d ___, 2007 WL 2089365, 07-06-0489-CR (Tex. App.—Amarillo 2007, no pet.).

501.014(e) order was "closely related to the criminal case" from which the court costs sprang, its appellate jurisdiction depended upon rules governing criminal appeals; and, since there is no express statutory authority providing for an appeal from a Section 501.014(e) order, it is not an "appealable order" for purposes of a criminal appeal.[25] With respect to its direct appeal (as opposed to its original mandamus) jurisdiction, the Waco Court of Appeals has followed the example of the Amarillo court, holding in a series of cases that an appeal from a Section 501.014(e) order "is a criminal case."[26] Because a Section 501.014(e) order is not, however, an appealable order, the Waco court has dismissed each of these attempted appeals for lack of jurisdiction.[27]

Most recently, however, the San Antonio Court of Appeals, like the Texarkana court, has rejected the proposition that an order under Section 501.014(e) emanating from a criminal judgment is itself a criminal law matter. In *Reed v. State*,[28] the court of appeals reasoned:

> While the order in the instant case may have arisen as a result of, or incidental

---

[25] *Id*. at *1-*2.

[26] *Zink v. State*, 244 S.W.3d 508, 509 (Tex. App.—Waco 2007, no pet.); *Phillips v. State*, 244 S.W.3d 510 (Tex. App.—Waco 2007, no pet.).

[27] *Zink*, *supra*; *Phillips*, *supra*; *In re Martinez*, 238 S.W.3d 601, 602 n.1 (Tex. App.—Waco 2007, no pet.); *Chudej v. State*, 255 S.W.3d 273 (Tex. App.—Waco 2008, no pet.).

[28] ___ S.W.3d ___, 2008 WL 2714463, No. 04-07-00004-CV (Tex. App.—San Antonio, delivered July 9, 2008).

to, a criminal prosecution, the trial court's order does not arise over the enforcement of a statute governed by the Texas Code of Criminal Procedure. In fact, the order specifically provides "THE COURT ENTERS THIS ORDER pursuant to Government Code, Section 501.014 . . . ." Reed is not contesting the trial court's authority to assess court costs against him. Instead, the dispute is over the trial court's authority to collect the costs assessed under section 501.014(e) of the Texas Government Code. Tex. Gov't Code Ann. § 501.014(e). We note the legislature has determined that costs in criminal judgments may be collected through a civil execution process. Tex. Code. Crim. Proc. Ann. art. 43.07 (Vernon Supp.2008). Article 43.07 of the Texas Code of Criminal Procedure provides in relevant part: "[i]n each case of pecuniary fine, and execution may issue for the fine and costs . . . . The execution shall be collected and returned as in civil actions. *Id*. Consequently, we are unable to conclude that the trial court's order involves a criminal law matter as described in *Curry*.[29]

The court of appeals in *Reed* went on to hold (similarly to the Texarkana Court of Appeals in *Abdullah*) that the trial court's Section 501.014(e) order was appealable, conferring appellate jurisdiction.[30] On the merits, the court of appeals rejected the Texarkana court's view that the garnishment provisions of the Rules of Civil Procedure necessarily govern in all Section 501.014(e) proceedings,[31] but nevertheless went on to hold that, on balance, "Reed's due process rights were violated because his claims regarding the merits of the order

---

[29] *Id*. at *2.

[30] *Id*. at *3 ("Having determined that this matter is civil, we next address whether the trial court's order is final and appealable. The trial court's order in this case was for the collection of court costs through a post-judgment process. In civil actions, post-judgment orders may be appealed as final orders if the order disposes of all matters placed before the court. * * * Both garnishment orders and turnover orders are appealable. *Schultz v. Fifth Jud. Dist. Ct. Of Appeals*, 810 S.W.2d 738, 740 (Tex. 1991).").

[31] *Id*. at *5

have not been heard in any forum."[32]

In the instant cause we must decide which view constitutes the correct one for purposes of construing our mandamus jurisdiction under Article V, Section 5(c). Is the order under Section 501.014(e) so "closely related" to the criminal judgment that gave rise to it that we are compelled to conclude that it is a "criminal law matter"? Or is it a civil-law matter that happens to stem from a criminal judgment of conviction? We conclude it is the latter.

### Constitutional Construction

As with statutory construction, when we construe a provision of the Texas Constitution, we are principally guided by the language of the provision itself as the best indicator of the intent of the framers who drafted it and the citizenry who adopted it.[33] But if that language is less than plain and admits of ambiguity, we may resort to extra-textual factors, including the likely adverse consequences of a particular construction.[34] From the

---

[32] *Id*. at *6.

[33] *See, e.g., Booth v. Strippleman*, 61 Tex. 378, 380 (1884) ("constitutions, like statutes, must be construed . . . with the view of arriving at and enforcing the intention of the convention."); *Stine v. State*, 908 S.W.2d 429, 431 (Tex. Crim. App. 1995) (plurality opinion) ("In interpreting statutes, it is the practice of this court to concentrate on the literal text of a statute in order to ascertain its meaning. * * * This Court should be guided by the same principle when interpreting constitutional provisions."); *Gallagher v. State*, 690 S.W.2d 587, 591 (Tex. Crim. App. 1985) ("Turning to the rules of constitutional construction, it is observed that constitutional provisions which are not ambiguous and are not open to more than one construction or interpretation must be given their full effect without regard to the consequences."); *Cook v. State*, 902 S.W.2d 471, 478 (Tex. Crim. App. 1995) ("As a first step, we attempt to effectuate the intent of the framers of a constitutional amendment, and the voters who approved the amendment.")

[34] *See* 12A Tex.Jur.3d Constitutional Law § 25 (2004), at 419 ("if the literal text of a

above survey of the various opinions of the courts of appeals on this subject, it should be apparent that whether an order under Section 501.014(e) of the Government Code fits within the definition of "criminal law matters" under Article V, Section 5(c), of the Texas Constitution, as construed by our own case law, is less than clear cut. To construe "criminal law matters" to embrace the issues presented in the instant mandamus proceeding would have, we think, most unfortunate jurisprudential consequences.

To illustrate, we begin with the observation that Article V, Section 5(c) is not the only place in the Texas Constitution that defines a particular court's jurisdiction with reference to the phrase, "criminal law matters." Article V, Section 3(a), of the Texas Constitution defines the appellate jurisdiction of the Texas Supreme Court as extending "to all cases *except in criminal law matters* and as otherwise provided in this Constitution or by law."[35] In deciding how to apply "criminal law matters" for purposes of our own mandamus jurisdiction, we should be mindful of the potential effect of our construction upon the Supreme Court's appellate jurisdiction.[36] By declaring our own mandamus jurisdiction to reach the issues presented here, we would very likely encroach upon the appellate jurisdiction

---

constitutional provision is unclear or could lead to an absurd result, a court construing the provision may look outside of the language for aid in its interpretation.").

[35] TEX. CONST. art. V., § 3(a) (emphasis added).

[36] It is well established that a constitutional provision should not be construed in isolation, but as it relates to and interacts with other constitutional provisions. *E.g.*, *Peirson v. State*, 147 Tex. Crim. 15, 19-22, 177 S.W.2d 975, 977-79 (1944).

of the Supreme Court.[37]

Were we to exercise our mandamus jurisdiction in this cause, we would essentially cut off any definitive determination of the underlying legal issues involved—at least for Section 501.014(e) orders issued to collect court costs from criminal law judgments. The reason is simple. As the courts of appeals have uniformly noted, if the matter is criminal in character, it would not be subject to direct appeal because a Section 501.014(e) order does not constitute an appealable order under this Court's jurisprudence.[38] The only way for the courts of appeals or for this Court to address issues arising from such an order would be via applications for writ of mandamus, as in this case. But in the mandamus context, we need not resolve the particular legal issue involved.[39] It is often sufficient (and therefore

[37]

  *See State ex rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 386, 410-11 (Tex. Crim. App. 1994) (Clinton, J., dissenting) ("criminal law matters" should not be construed differently for purposes of Article 5, Section 5 of the Texas Constitution than for Article 5, Section 3).

[38]

  *See* note 27, *ante*. This Court has long held that the right to appeal must be conferred by statute. *E.g.*, *Galitz v. State*, 617 S.W.2d 949, 951 (Tex. Crim. App. 1981); *Rushing v. State*, 85 S.W.3d 283, 285 (Tex. Crim. App. 2002); *see also Kutzner v. State*, 75 S.W.3d 427, 431 (Tex. Crim. App. 2002) ("this Court will entertain an appeal when it is expressly authorized by statute and when it is related to the 'standard definition' of a criminal case."). And as the Waco Court of Appeals has observed, "[n]o statute authorizes an appeal from an order under section 501.014(e)." *Chudej v. State*, *supra*, at 273.

[39]

  In order to obtain mandamus relief, a relator must establish that he had no adequate remedy at law, and that the action he seeks to compel is ministerial  *State ex rel. Young v. Sixth Court of Appeals*, *supra*, at 210. He can make the latter showing by demonstrating that he has a "clear right to the relief he seeks"—that is to say that "the law he invokes is definite, unambiguous, and unquestionably applies to the indisputable facts of the case." *Id*. If a court of appeals grants mandamus relief upon any lesser showing, it abuses its discretion and is subject to a writ of mandamus from this Court. *Id*., *quoting Lanford .v Fourteenth Court of Appeals*, *supra*, at 586.

preferable) in disposing of a mandamus proceeding for a court merely to conclude that the underlying legal issue is as yet unsettled.[40] The underlying legal question, *e.g.*, whether due process does require that a Section 501.014(e) order provide an inmate prior notice and an opportunity to be heard, need never be definitively answered, either by the courts of appeals or by this Court, in the course of mandamus proceedings.

By contrast, treating the matter as civil in character almost certainly means that an order under Section 501.014(e) is appealable.[41] In the context of a direct appeal, the legal question can be addressed directly and resolved—just as it *has* been resolved by the Texarkana and San Antonio courts of appeals, in *Abdullah* and *Reed*.[42] Moreover, as long as the issue is not regarded as a "criminal law matter," any inconsistencies among the various courts of appeals in applying and construing Section 501.014(e) to recover court costs emanating from criminal judgments would be subject to final resolution by the Supreme Court under its appellate jurisdiction.

And indeed, the Texas Supreme Court recently granted a petition for review in just

----

[40]

*See, e.g.*, *State ex rel. Young v. Sixth Court of Appeals*, *supra*, at 213 ("we cannot say that the rule announced by the court of appeals is of such indubitable provenance that the trial court in this case had a ministerial duty to apply it to the facts of this case to reach a particular result in the exercise of what would otherwise constitute a manifestly judicial function.").

[41]

*Abdullah*, *supra*, at 940-41 & n.5; *Reed*, *supra*, at *3.

[42]

We need not, and do not, express any opinion whether these courts of appeals have resolved the matter *correctly*.

such a case.[43]  *Harrell v. State* squarely presents both the question of whether an order

pursuant to Section 501.014(e) for the recovery of courts costs after a criminal prosecution

is a civil matter, and whether, assuming that it is, due process is violated when a court issues

such an order without affording the affected inmate notice and an opportunity to be heard.

Were we to construe such an order in the instant cause to constitute a "criminal law matter,"

we would generate a potential conflict between our bifurcated highest appellate courts in

Texas, should the Supreme Court ultimately regard the matter as civil in character, and thus

subject to its own appellate jurisdiction (because *not* a "criminal law matter").  We think that

as a matter of practicality,[44] public policy, and comity between our highest courts, we should

favor a construction of "criminal law matters" that will keep the lines of direct appellate

review open, so that the legal issues can be confronted directly and finally resolved, over one

that will force the affected parties to resort to extraordinary remedies that do not necessarily

---

[43]

*Harrell v. State*, 2007 WL 2301350 (Tex. App.—Amarillo, delivered Aug. 13, 2007) (No. 07-06-0469-CR, 07-06-0470-CR), review granted (Aug. 29, 2008).

[44]

We say practicality because of the potential for complication that could arise should we deem an order for TDCJ to withdraw inmate funds pursuant to Section 501.014(e) to satisfy criminal court costs to be itself a "criminal law matter."  Consider the following hypothetical: Suppose TDCJ on the same day received two orders, entered on the same day, from two district courts in two different counties.  The first order emanated from a judgment in a civil case assessing court costs against the inmate, while the second order emanated from a criminal judgment, and also assessed court costs against him.  Both orders would be authorized under Section 501.014(e)(4), and so TDCJ would have no ready statutory criteria by which to prioritize them.  Would any ensuing litigation over which order should take priority in the event of insufficient funds in the inmate's account be regarded as a civil law matter, subject to a later appeal, a criminal law matter, subject only to review by way of a writ of mandamus—or some kind of hybrid, subject to no later review at all?

resolve the underlying legal questions and may even result in foreclosing the possibility of any final resolution.

## CONCLUSION

Accordingly, we hold that the instant proceeding does not involve a "criminal law matter." Therefore, we lack original mandamus jurisdiction. The application for writ of mandamus is dismissed.[45]

Delivered:    October 29, 2008
Publish

---

[45] We note that "[t]he Legislature may confer original jurisdiction on the Supreme Court to issue writs of . . . mandamus in such cases as may be specified, except against the Governor of the State." TEX. CONST. art. V, § 3(a). And under the Government Code, the Supreme Court is expressly authorized to issue writs of mandamus against a court of appeals, "agreeable to the principles of law regulating those writs[.]" TEX. GOV'T CODE, § 22.002(a).