

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---
## NO. PD-1067-15
---

### EX PARTE JAMES RICHARD "RICK" PERRY, Appellant

---
### ON APPELLANT'S AND STATE'S PETITIONS FOR DISCRETIONARY REVIEW FROM THE THIRD COURT OF APPEALS TRAVIS COUNTY
---

**JOHNSON, J., filed a dissenting opinion.**

### D I S S E N T I N G   O P I N I O N

The opinion of the Court stretches constitution, case law, and statute beyond where I am willing to follow. This case does not involve separation of powers, many of the examples set out are inapposite, and the language used as to appellant differs from all other writ opinions.

"The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, . . .." Tex. Const. art. II, § 1. As the opinion of the Court states, in relevant part, the separation-of-powers provision is violated "when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers." But the language of the Texas

Constitution makes it clear that it specifically affects only the "Government of the State of Texas," and we are bound by the plain language of that provision.

> As with statutory construction, when we construe a provision of the Texas Constitution, we are principally guided by the language of the intent of the framers who drafted it and the citizenry who adopted it. But if that language is less than plain and admits of ambiguity, we may resort to extra-textual factors, including the likely adverse consequences of a particular construction.

*Johnson v. Tenth Judicial Dist. Ct. Of Appeals at Waco*, 280 S.W.3d 866, 872 (Tex. Crim. App. 2008) (footnotes omitted).

> Turning to the rules of constitutional construction, it is observed that constitutional provisions which are not ambiguous and are not open to more than one construction or interpretation must be given their full effect without regard to the consequences.

*Gallagher v. State,* 690 S.W.2d 587, 591 (Tex. Crim. App. 1985). *See also Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991).

In this case, it is alleged that a branch of state government, the executive branch, interfered with another branch of government, but the branch that was allegedly interfered with is not a branch of state government; it is a branch of county government. I find nothing in the plain meaning of the Texas Constitution that permits the executive branch of the state to interfere in the affairs of a different sovereign and then claim the protection of the state doctrine of separation of powers, which is intended to keep one branch of state government from interfering with the powers assigned to either of the other two state branches.

The Court's opinion sets out a "list of horribles" in support of finding the statute unconstitutional, but a number of the examples do not fall within the dictates of the statute. For example, a "manager could not threaten to fire or demote a government employee for poor performance." This is an employment-law issue, unrelated to the statute at issue, and the salient

issue is good cause for terminating employment. "An inspector general could not threaten to investigate an agency's financial dealings." According to the website of Office of the Inspector General,[1] "the OIG oversees investigations of waste, fraud and abuse of tax dollars . . .." That agency could therefore lawfully "threaten" to investigate the financial dealings of the agencies over which it has jurisdiction. "A prosecutor could not threaten to bring charges against another public servant." Prosecutors can, and do, lawfully bring charges against other public servants. "A public defender could not threaten to file a motion for suppression of evidence to secure a better plea bargain for his client." Any defense attorney is entitled to file any motion that is appropriate in representing the client; many actions by defense counsel are taken in an effort to reach the best possible resolution of the pending charges. And do not prosecutors also "threaten" to reindict the client on a higher charge in an effort to get the client to take the pending plea offer?

Part of the problem with the listed examples is the loose usage of the word "threaten." My faithful dictionary[2] defines "threat" as "a declaration of an intention or determination to inflict punishment, injury, death, or loss on someone in retaliation for, or conditionally upon, some action or course; an indication of probable evil, violence, or loss to come; . . .." "Threaten" means "to utter a threat against." The examples above describe common situations in which the action is legal and proper. In shorthand, a threat is an indication of intent to do some act which is improper and/or illegal. It is not illegal, nor a threat, to take an action that one is entitled to take, such as to inform a tenant that, unless the back rent is paid, the landlord will begin eviction proceedings, or for a police officer to tell someone that he must move his car or be ticketed, or for a home owner to tell the

---

[1] https://www.tdcj.state.tx.us/divisions/oig/

[2] Webster's Encyclopedic Unabridged Dictionary of the English Language 1478 (Gramercy Books 1989).

persistent encyclopedia salesman on the doorstep that, if he does not leave, the home owner will ask the police to drop by.

Finally, as Judge Newell has noted, this case has been greatly affected by who it involves. In no other appeal I have read during the seventeen years that I have served on this Court has appellant been called anything other than "appellant." The constant references to "Governor Perry" could well be seen by the public as an inference that appellant's position in life entitles him to special privileges and special treatment by this Court that others might be denied.[3]

---

[3] The majority cites to *United States v. Nixon,* 418 U.S. 683 (1974), in support of its use of appellant's given name, however, I note that, at the time of that decision (July 24, 1974), Nixon was still President (until August 9, 1974), the claim raised was a president's privilege of confidentiality, and the underlying issues arose from the burglary at the Watergate, not from arguably legitimate Article II duties.

> In this case the President challenges a subpoena served on him as a third party requiring the production of materials for use in a criminal prosecution; he does so on the claim that he has a privilege against disclosure of confidential communications. He does not place his claim of privilege on the ground they are military or diplomatic secrets. As to these areas of Art. II duties the courts have traditionally shown the utmost deference to Presidential responsibilities. In *C. & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 111 (1948), dealing with Presidential authority involving foreign policy considerations, the Court said:
>
>> The President, both as Commander-in-Chief and as the Nation's organ for foreign affairs, has available intelligence services whose reports are not and ought not to be published to the world. It would be intolerable that courts, without the relevant information, should review and perhaps nullify actions of the Executive taken on information properly held secret.
>
> In *United States v. Reynolds*, 345 U.S. 1 (1953), dealing with a claimant's demand for evidence in a Tort Claims Act case against the Government, the Court said:
>
>> It may be possible to satisfy the court, from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged. When this is the case, the occasion for the privilege is appropriate, and the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers. *Id*. at 10.
>
> No case of the Court, however, has extended this high degree of deference to a President's generalized interest in confidentiality. Nowhere in the Constitution, as we have noted earlier, is there any explicit reference to a privilege of confidentiality, yet to the extent this interest relates to the effective discharge of a President's powers, it is constitutionally based.

*Id*. at 710-11.

I dissent.

Filed:  February 24, 2016
Publish