

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-24-00165-CR

---

RICHARD DUBART TEAGUE, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 54782-A

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Opinion by Justice Rambin
Concurring Opinion by Justice van Cleef
Dissenting Opinon by Chief Justice Stevens
Concurring Opinion by Justice Rambin

# OPINION

Richard Dubart Teague pled guilty to possession of child pornography with "intent to promote." The trial court sentenced Teague to eight years in prison. Via this appeal, Teague contests neither his guilt nor his punishment.

Instead, Teague, via appointed appellate counsel, contests the trial court's finding that he has the ability "to offset in part or in whole" the cost of appointed trial counsel. The record shows that, at the time he was provided appointed trial counsel, Teague did not have a job and had no income. The record also shows that between then and sentencing, Teague got a job and had been working for approximately two years. For that and other reasons, we find that there was a basis for the trial court's order that Teague reimburse Gregg County for the expenses of appointed trial counsel. We affirm.

## I.    Background

Teague was charged with the second-degree felony offense of possessing child pornography with "intent to promote."[1, 2] The date of the offense alleged in the indictment was "on or about the 23rd day of May, 2022." Teague was fifty-two years old at the time of the offense.

---

[1]*See* TEX. PENAL CODE ANN. § 43.26(e), (g) (Supp.); *see also* TEX. PENAL CODE ANN. § 43.21(a)(5) (defining "[p]romote" as "to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same").

[2]A partial history of relevant subsections (b)(1) and (g) of Section 43.26 of the Texas Penal Code in effect at the time of Teague's alleged offense is hereby provided. *See* Act of May 23, 1997, 75th Leg., R.S., ch. 933, § 1, sec. 43.26(b)(1), 1997 Tex. Gen. Laws 2931, 2931 (repealed 2025); Act of May 31, 2015, 84th Leg., R.S., ch. 933, § 2, 2015 Tex. Gen Laws 3221, 3222 (amended 2023, 2025) (current version at TEX. PENAL CODE § 43.26(g)).

2

In a verified request for appointment of counsel on June 13, 2022, Teague attested that, as of that date, he did not have a job and that his income was zero. He attested that his wife's income was likewise zero. He attested that he and his wife owned their house, but they had car loan payments, medical upgrade-home repair payments, car insurance, phone, cable, and utility expenses. He further attested that, though his wife's income was zero, he was able to satisfy a $15,000.00 bond via his wife's resources. The trial court, however, did not grant Teague appointed counsel at the time of his application.

The record contains a June 26, 2023, appearance by counsel. Counsel appears to have been retained as of June 2023, as the trial court had not yet granted Teague's application for appointed counsel, and the record does not contain a request for payment regarding the June 2023, appearance of counsel. The order appointing trial counsel, appended to the end of the application for appointed counsel, was signed on January 3, 2024. The order states that the appointment was based on a finding that "the defendant [wa]s (circle one) indigent or the interests of justice require." Neither option is circled. Following appointment of trial counsel, Teague waived his right to a jury trial and pled guilty to the charge.

At the August 29, 2024, plea hearing, a stipulation of evidence by Teague, the offense report, and video recordings were admitted into evidence. In the stipulation of evidence, Teague waived his right to confront and cross-examine witnesses and consented to the introduction of written and documentary evidence against him. The offense report indicates that an undercover officer with the Office of the Attorney General was on an online file-sharing network often used to share child pornography. On multiple dates in February and March 2022, the officer

3

downloaded electronic files of child pornography from a certain internet protocol (IP) address. The offense report states that "[t]he nude children depicted [in the video recordings] are mostly pre-pubescent and of such a young age that it is obvious they are children." After receiving the video recordings from the undercover officer, a special agent with the Texas Department of Public Safety (DPS) then obtained a subpoena to be served on the internet-service provider to ascertain the physical location of the IP address. The internet-service provider provided investigators with an address in Longview, Texas. The DPS special agent then drove to the address and observed it to be the location of a business. The special agent spoke to the owner and the manager of the business. Both assisted the special agent in comparing when the videos were downloaded with company work schedules. That comparison focused the investigation on Teague. Teague often worked long weekend shifts and used an on-premises bedroom when he did so. The special agent obtained a warrant to search the location and any electronic devices seized at the location. The special agent returned on May 23, 2022, when Teague was alone at the business location. The special agent found Teague in the bedroom. While searching the bedroom, the special agent found and seized a laptop. The laptop contained Teague's email account and credit card data, indicating it belonged to him. Examination of the laptop revealed multiple images of child pornography. As stated in the offense report, "For example, one image depicts a female toddler performing oral sex on an adult male."

During the plea and sentencing hearings, neither Teague nor the State specifically addressed Teague's ability to repay attorney fees. At the plea hearing, the trial court heard Teague's plea of guilt and then heard testimony from Teague's wife. Teague's wife testified to

4

what would happen to her, financially and otherwise, if Teague were sentenced to prison. She testified that Teague worked at a convenience store and had been for approximately two years. She gave no testimony regarding how many hours Teague worked or his rate of pay. She stated that sometimes Teague made enough to cause her Social Security benefits to be reduced. She testified that Teague managed the finances. She stated that, if Teague were imprisoned, she believed the result would be "I lose my land, I lose my house, I lose the car." She testified to her medical conditions and health issues. She stated that, in her opinion, if Teague were imprisoned and no longer able to care for her, she would die. She testified, however, that her health issues began years before Teague committed the offense to which he pled guilty. At the conclusion of the hearing, the trial court announced that Teague would be receiving a prison sentence and that it had not "made a decision yet as far as the number [of years], but these offenses are just really, really, really bad." The trial court stated that Teague's sentence would be pronounced at a subsequent hearing, but in the meantime, "I'm going to give you time to help your wife out, try to get all these affairs in order."

The trial court apparently had the benefit of a pre-sentence investigation (PSI) that went into greater detail regarding Teague's finances. Teague asked the trial court to consider the PSI. The trial court considered the PSI important, but the PSI is not part of our record on appeal.

The trial court held Teague's sentencing hearing on October 7, 2024. The record contains a request for payment by Teague's trial counsel dated October 7, 2024. The lower portion of that document is a section for the trial court to approve the request. It bears the trial judge's signature approving the request and a handwritten date of October 7, 2024. The

5

document bears a filestamp from the district clerk's office indicating that it was filed at 10:05 a.m. on the same date. The record contains a bill of costs *without* attorney's fees. This too is filestamped at 10:05 a.m. That version of the bill of costs bears Teague's signature, acknowledging receipt. Though that version does not have a dollar amount for attorney fee reimbursement, it states immediately below Teague's signature, "This does not include Attorney Fee's [sic], Restitution, Reimbursement and/or any other additional cost that may be applicable." The record contains another bill of costs *with* an attorney fee reimbursement, also filestamped at 10:05 a.m. There was no discussion of the request for payment at the sentencing hearing, nor was there a discussion at the sentencing hearing regarding the trial court's indigency finding or of Teague's ability to repay the cost of appointed trial counsel.

At the sentencing hearing, Teague asked for the appointment of appellate counsel. The trial court, from the bench, appointed Teague appellate counsel. The trial court sentenced Teague to eight years' confinement in prison.

The trial court's judgment incorporates a copy of the bill of costs showing an attorney fee reimbursement. The trial court's judgment is filestamped at 2:57 p.m. The trial court's judgment found that Teague "ha[d] financial resources that enable Defendant to offset in part or in whole the cost of" trial counsel and ordered Teague to reimburse Gregg County $1,678.75 pursuant to Article 26.05(g) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (Supp.).

6

## II.    The Statutory Scheme Regarding Appointed Counsel

There are many statutes bearing on the appointment of counsel and the reimbursement of the expenses of appointed counsel.  We consider these statutes because related statutes should be considered together,[3] in a way that avoids "undermin[ing]" the "practical effect" sought to be achieved by the Legislature.[4]  "[W]e are to presume that the Legislature intended for the entire statutory scheme to be effective."[5]  This is not always easy; considering statutes together to achieve the result intended by the Legislature can sometimes require *two* flowcharts to sort out, even for a sum as small as $52.00 dollars.[6]

It is worth noting at the outset what this is *not* about:

> An ability-to-pay inquiry is not fundamental to the adjudicatory system; it is a post-trial procedure that has nothing to do with adjudication; it does not ensure a jury, a fair trial, a correctly informed sentencing judge, or a defendant's ability to understand the proceedings against him.  It does not implicate "the integrity of judicial sentencing proceedings" or "the criminal adjudicatory process[.]"

*Cruz v. State*, 698 S.W.3d 265, 269 (Tex. Crim. App. 2024) (alteration in original).  "In short, an ability-to-pay inquiry made during or right after sentencing bears no consequence to the adjudicatory process." *Id.*

---

[3]*See Diruzzo v. State*, 581 S.W.3d 788, 799 (Tex. Crim. App. 2019).

[4]*State v. Green*, 682 S.W.3d 253, 275 (Tex. Crim. App. 2024).

[5]*Bradshaw v. State*, 707 S.W.3d 412, 420 (Tex. Crim. App. 2024).

[6]*See id.* at 414, 418–19.  This is true even when looking at the plain language of the statutes involved in an effort to ascertain their combined operation.  *Id.* at 420.  *Bradshaw* noted that two courts of appeals had held that "the conviction date controls the assessment [of the cost at issue]" whereas four courts of appeals had held that "the offense date controls the assessment." *Id.* at 415.  The Texas Court of Criminal Appeals stepped in "to resolve this conflict." *Id.* at 416.  It turns out that neither the two nor the four had it right. *See id.* at 420.  Standing alone, neither the offense date nor the conviction date controlled. *See id.*  Instead, the date of the offense controlled the law applicable to the case, and if the law as of that date called for the imposition of the cost at sentencing, then the conviction date controlled. *Id.*

7

### A.    The Nature of Attorney Fee Reimbursement Orders

A trial court may "order a defendant to re-pay costs of court-appointed legal counsel that the court finds the defendant is able to pay." *Cates v. State*, 402 S.W.3d 250, 251 (Tex. Crim. App. 2013) (citing TEX. CODE CRIM. PROC. ANN. art. 26.05(g)).  Regarding ability to pay, "[a] defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs."   TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (Supp.).   However, "[e]vidence need not be conclusive" in order "to rebut this presumption." *Eaglin v. State*, 710 S.W.3d 833, 850–51 (Tex. App.—Houston [1st Dist.] 2024, pet. ref'd).[7]  "[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees." *Armstrong v. State*, 340 S.W.3d 759, 765–66 (Tex. Crim. App. 2011) (alteration in original) (quoting *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)).

When it comes to the reimbursement of the costs of court-appointed counsel, "indigency" is linked specifically and statutorily to the cost of counsel:  "For the purposes of this article and Articles 26.04 and 26.05 of this code, 'indigent' means a person who is not financially able to employ counsel." TEX. CODE CRIM. PROC. ANN. art. 1.051(b) (Supp.).  The statutory form for

---

[7]For example, "it is not uncommon for relatives or others to pay a lawyer to represent an indigent defendant with their own resources, and their resources usually do not negate the defendant's indigency." *Eaglin*, 710 S.W.3d at 850.  Thus, "[t]he retention of counsel in lieu of a court-appointed lawyer is not necessarily determinative of whether a defendant remains indigent." *Id.*  Even so, "the replacement of appointed counsel with retained counsel after a finding of indigency rebuts the presumption of continued indigency." *Id.* (citing *Easily v. State*, 248 S.W.3d 272, 281 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd)).  "The trial court has no duty to appoint counsel where an indigent defendant has managed to retain counsel or where the defendant has made no showing of indigency." *Gray v. Robinson*, 744 S.W.2d 604, 607 (Tex. Crim. App. 1988) (orig. proceeding).

requesting appointed counsel calls for the requesting defendant to state, under oath, that "I am without means *to employ counsel* of my own choosing and I hereby request the court to appoint counsel for me." TEX. CODE CRIM. PROC. ANN. art. 26.04(o) (Supp.) (emphasis added). Reimbursement is even more tightly linked to the cost of appointed counsel. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g). At the outset of a case, there might be room for discussion about what the cost of private counsel would be. But by the time the trial court enters judgment, the costs of trial counsel have been incurred, and thus, the trial court may not assess a reimbursement that exceeds the "the actual costs" incurred by the county in providing appointed counsel to the defendant (or, in counties with a public defender's office, the amount "that would have otherwise been paid to an appointed attorney had the county not had a public defender's office"). *Id.* The indigency inquiry regarding reimbursement of counsel is specific to that amount. *See McFatridge v. State*, 309 S.W.3d 1, 6 (Tex. Crim. App. 2010).[8] Given this specificity, even a defendant in generally dire financial straits may nonetheless be non-indigent: "[A]n individual's *negative* net worth does not necessarily translate into indigence; the real question is whether the defendant is capable of paying for legal counsel . . . ." *Whitehead v. State*, 130 S.W.3d 866, 878 (Tex. Crim. App. 2004) (emphasis added).

---

[8]In *McFatridge*, a defendant claimed indigency regarding appellate counsel and regarding the ability to pay for an appellate record. *McFatridge*, 309 S.W.3d at 5. The Court of Criminal Appeals held, "A defendant can be found indigent for one purpose without being found indigent for the other." *Id.* *McFatridge* was not an attorney fee reimbursement case. *Id*. at 9. Instead, it involved a challenge to the trial court's indigency determination regarding the cost of counsel for something that, from the trial court's vantage point, would occur in the future: an appeal. *Id.* The Court of Criminal Appeals put a number on that: "The record contains no estimate of what the cost of competent private legal counsel would be for a typical [driving while intoxicated] appeal in Navarro County, but we have no reason to believe it should exceed $6,670.[00]." *Id.*

A defendant's obligation to pay a reimbursement assessed in a trial court's judgment does not arise until appeal of that judgment is final: "[T]he pendency of appeal suspends the obligation to pay court costs." *Dulin v. State*, 620 S.W.3d 129, 130 (Tex. Crim. App. 2021). The Court of Criminal Appeals came to this conclusion via the analysis of several statutes regarding court costs. "Under the Code of Criminal Procedure, the trial court has the power to direct when the payment of a fine or court costs occurs: when sentence is pronounced, at a later date, or at designated intervals." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 42.15). "There is also a statute giving the trial court some direction about and control over the payment of restitution." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 42.037). In addition, there are statutes regarding what sanctions a trial court may impose if costs are not paid. *Id.* (citing TEX. CODE CRIM. PROC. ANN. arts. 45.046, .047, .049).

As of today, "reimbursement fee" is the statutory term for a court-ordered reimbursement of the costs of appointed counsel:

> If the judge determines that a defendant has financial resources that enable the defendant to offset in part or in whole the costs of the legal services provided to the defendant . . . the judge shall order the defendant to pay . . . as a reimbursement fee the amount that the judge finds the defendant is able to pay.

TEX. CODE CRIM. PROC. ANN. art. 26.05(g). That has not always been the statutory term. For example, at the time of *Cates*, Article 26.05(g) expressly considered attorney fee reimbursements as "costs of court." *Cates*, 402 S.W.3d at 251 (citing TEX. CODE CRIM. PROC. ANN. art. 26.05(g)).[9] So does *Cates* still apply? Do attorney fee reimbursements fit in the category of

---

[9]As of 2013, Article 26.05(g) stated, "If the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, . . . the court shall order the defendant to pay the

10

"costs" or "costs of court" as those terms appear in statutes other than Article 26.05(g)? The answer to both questions is "Yes."

The change from "court costs" to "reimbursement fee" sprang from the Legislature's response to a 2017 decision of the Court of Criminal Appeals. In *Salinas v. State*, the court found the Consolidated Fee Statute (at that time found at Section 133.102 of the Texas Local Government Code) unconstitutional-in-part because 0.0088 percent of the funds collected under that statute went to an "abused children's counseling" program and 9.8218 percent went to a "comprehensive rehabilitation" program. *Salinas v. State*, 523 S.W.3d 103, 107–09 (Tex. Crim. App. 2017). As of 2017, though, the abused children's counseling fund no longer existed, so those funds went to the State's General Revenue Fund. *Id.* at 109–110. As for the rehabilitation program, while crime victims were doubtlessly among those who availed themselves of the program, the program was open to all who suffered from qualifying conditions, including traumatic brain injuries. *Id.* at 108–09. On that basis, and as regards those programs, the Consolidated Fee Statute was held to be a tax, and therefore "unconstitutional in violation of the Separation of Powers provision of the Texas Constitution." *Id.* at 109, 110.

In its 2019 Regular Session, the Legislature responded with Senate Bill 346. *See* Act of May 23, 2019, 86th Leg., R.S., ch. 1352, 2019 Tex. Gen. Laws 3981–4035.[10] That bill amended

---

amount that it finds the defendant is able to pay." Act of May 24, 2001, 77th Leg., R.S., ch. 906, § 8, sec. 26.05(g), 2001 Tex. Gen. Laws 1800, 1808 (amended 2015, 2019) (current version at TEX. CODE CRIM. PROC. art. 26.05(g)).

[10]The Senate Research Center's "Sponsor's Statement of Intent" provides that,

> In the wake of the *Salinas* case, appellate courts have ruled several other courts costs do not serve a legitimate criminal justice purpose. The loss of the proceeds from additional criminal court costs

numerous statutes to rename "fees" as "reimbursement fees" and to state that reimbursements as "court costs" would thereafter be called a "reimbursement fee." *Id.* Among the statutes so modified was the time-payment reimbursement fee addressed in *Dulin*, Article 102.030 of the Texas Code of Criminal Procedure.[11] *See id.* at 4010. The 2019 revision of the time-payment fee statute is relevant to the present analysis because, as a result of Senate Bill 346, Article 102.030(a)(2) makes the time payment fee applicable following a judgment "assessing the fine, court costs, restitution, or other reimbursement fee." *Id.*; TEX. CODE CRIM. PROC. ANN. art. 102.030(a)(2). Whether something is a reimbursement matters because, later in 2019, the Court of Criminal Appeals held that *Salinas* was limited to instances where funds were collected to offset *future* expenses: "*Salinas* did not erect a new requirement that all court-cost statutes, including those imposing reimbursement-type costs, must explicitly allocate funds to be expended in the future for legitimate criminal justice purposes." *Allen v. State*, 614 S.W.3d 736, 744 (Tex. Crim. App. 2019). Consequently,

> [w]hen a court-cost statute seeks to recoup expenses legitimately incurred in
> connection with the prosecution of a defendant's criminal case, then the collection

---

being found unconstitutional could have negative impacts on the provisions of vital services, particularly those paid for by local government entities with the proceeds from court costs.

LEGIS. REFERENCE LIBR. OF TEX., SENATE RESEARCH CENTER, *Bill Analysis*, Tex. S.B. 346, 86th Leg., R.S. (2019) https://lrl.texas.gov/legis/billsearch/BillDetails.cfm?legsession=86-0&billTypeDetail=SB&billNumberDetail=346&billsuffixDetail= (follow Enrolled (Senate Research Center) hyperlink). We do not consider this legislative material regarding the construction of any particular statute, but instead as material bearing on the "practical effect" of what the Legislature intends in this field. *See Green*, 682 S.W.3d at 275; *see also Gray*, 744 S.W.2d at 606 ("These statutes [regarding the indigent defense system] have been consistently construed according to their clear, unambiguous and strict mandates, which is in keeping with *the tight budgetary limitations of this State*." (emphasis added)).

[11]*Dulin* addressed the time payment fee under a prior and differently enumerated statute. *Dulin*, 620 S.W.3d at 129; *see Brown v. State*, No. 06-20-00017-CR, 2020 WL 3865736, at *2 (Tex. App.—Texarkana July 9, 2020, no pet.) (mem. op., not designated for publication).

of such fees is a proper part of the judicial function and does not render the courts tax gatherers in violation of the separation of powers clause.

*Id.* at 745.

## B.   Ways of Collecting Costs

One way the State may collect on a judgment calling for reimbursement of the costs of appointed counsel is via an order of withdrawal from an inmate's trust account. *See Harrell v. State*, 286 S.W.3d 315, 317 (Tex. 2009) (citing TEX. GOV'T CODE ANN. § 501.014(e)). "[P]roceedings under Government Code [S]ection 501.014(e) to recover court fees and costs assessed against inmates are civil in nature and not part of the underlying criminal case." *Id.* at 316.[12]   Withdrawal orders are, in effect, a garnishment. *Id.* at 319.[13]   This does not mean, though, that withdrawal orders are subject to all the strictures of civil garnishment. *Id.* at 320 ("If [the Texas Department of Criminal Justice (TDCJ)] were required to conform strictly with full-blown statutory garnishment requirements . . . [the] TDCJ would doubtless face expending more money than it would ever collect in many cases, since withdrawal orders typically seek modest sums. Faced with this cost-benefit tradeoff, [the] TDCJ would likely opt not to seek recoupment at all, thus subverting the Legislature's goal of efficient cost-collection." (footnote omitted) (citation omitted)). "Such post-judgment collection efforts are designed to reimburse the State, not to punish the inmate . . . ." *Id.* at 316.   Inmates have an opportunity to object to such withdrawals. *Id.* ("[D]ue process is satisfied if the inmate receives notice and the

---

[12]*See also Johnson v. Tenth Jud. Dist. Ct. of Appeals at Waco*, 280 S.W.3d 866, 868, 873–74 (Tex. Crim. App. 2008) (orig. proceeding) (dismissing for want of jurisdiction, in anticipation of *Harrell*, a district judge's mandamus petition against a court of appeals over what process is due regarding a trial court's Section 501.014 of the Texas Government Code order to withdraw funds from an inmate's fund).

[13]*See also* TEX. CIV. PRAC. & REM. CODE ANN. § 63.007 ("Garnishment of Funds Held in Inmate Trust Fund").

opportunity to be heard after funds are withdrawn."). Challenges to withdrawal orders are properly the subject of a separate civil appeal. *Id.* at 321 ("[A]ppellate review should be by appeal, as in analogous civil post-judgment enforcement actions.").[14]

Further, payment of costs assessed in a criminal-conviction judgment may be imposed as a condition of parole. *See* TEX. GOV'T CODE ANN. § 508.221 (Supp.) ("A parole panel may impose as a condition of parole or mandatory supervision any condition that a court may impose on a defendant placed on community supervision . . . ."). This specifically includes reimbursement of attorney fees. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.301(a)(10) (Supp.) (listing reimbursement of attorney fees among the permissible conditions of community supervision).[15]

Another way for the State to collect is via a judgment lien filed in county deed records by "the attorney representing the [S]tate." TEX. CODE CRIM. PROC. ANN. art. 42.22, §§ 2(b)(1), 5(1) (Supp.). The lien must, among other things, identify "the criminal proceeding giving rise to the lien, including the name of the court, the name of the case, and the court's file number for the case." *Id.* § 6(3) (Supp.). The Legislature has provided statutory protections for defendants by, among other things, requiring that the lien state that "the amount of restitution owed at any one time may be less than the original balance and that the outstanding balance is reflected in the

---

[14]*See Anderson v. State*, No. 06-24-00002-CR, 2024 WL 4096446, at *3 n.8 (Tex. App.—Texarkana Sept. 6, 2024, no pet.) (mem. op., not designated for publication) ("[B]oth the Texas Supreme Court and the Texas Court of Criminal Appeals have held that challenges to orders to withdraw funds entered pursuant to Section 501.014(e) are civil matters, and Anderson's notice of appeal does not complain of the order to withdraw funds.").

[15]While costs based on a trial court's judgment may be imposed as a condition of parole, the imposition of conditions of parole is within the purview of the executive branch of government, specifically, the Board of Pardons and Paroles. *Ceballos v. State*, 246 S.W.3d 369, 373 (Tex. App.—Austin 2008, pet. ref'd) (citing *Bray v. State*, 179 S.W.3d 725, 729 (Tex. App.—Fort Worth 2005, no pet.) (en banc)).

records of the clerk of the court hearing the criminal proceeding giving rise to the lien," *id.* § 6(7) (Supp.), and by requiring that "[t]he clerk of the court entering the judgment creating the restitution lien shall maintain a record of the outstanding balance of restitution, fines, or costs owed," *id.* § 12(c) (Supp.).

### C.     Ways to Challenge Costs or Assert Financial Hardship

An appeal of the criminal-conviction judgment is not the only way to challenge costs assessed in that judgment, nor is it the only way to obtain relief from such costs on grounds of financial hardship.

"On the filing of a motion by a defendant not later than one year after the date of the final disposition of a case in which costs were imposed, the court in which the case is pending or was last pending shall correct any error in the costs." TEX. CODE CRIM. PROC. ANN. art. 103.008(a) (Supp.). Via this statute, a defendant may bring error(s) to the attention of the trial court. *Id.* This is an avenue separate from direct appeal, and indeed, takes place following the conclusion of any appeal. *See Johnson v. State*, 423 S.W.3d 385, 392 (Tex. Crim. App. 2014) ("[A]n appellant has a separate statutory remedy to correct erroneous or unsupportable costs."); *London v. State*, 490 S.W.3d 503, 508 n.5 (Tex. Crim. App. 2016) ("The legislature appears to have already provided a tailor-made vehicle for a challenge the assessment of court costs after the final disposition of a case."); *Dulin*, 620 S.W.3d at 133 n.29 ("[T]here is an available statutory remedy to challenge the time payment fee, if it is ever imposed.").

Even after the time period for an Article 103.008 of the Texas Code of Criminal Procedure challenge has expired, a defendant is not without recourse: "If a defendant notifies the

15

court that the defendant has difficulty paying the fine and costs in compliance with the judgment, the court shall hold a hearing to determine whether that portion of the judgment imposes an undue hardship on the defendant." TEX. CODE CRIM. PROC. ANN. art. 43.035(a) (Supp.). The relief available under Article 43.035(a), including periodic payments and waiver, "is available *forever* after sentencing." *Cruz*, 698 S.W.3d at 269 (emphasis added).

Lastly,[16] there is Article 26.05(g-1) of the Texas Code of Criminal Procedure. In *Cates*, the Court of Criminal Appeals held that, when ordering the reimbursement of court-appointed attorney fees, a court may not consider future financial circumstances. *Cates*, 402 S.W.3d at 252 ("Article 26.05(g) requires a present determination of financial resources and does not allow speculation about possible future resources."). In a concurring opinion, Presiding Judge Keller observed, "there is a good policy reason for changing that requirement: If a defendant subsequently acquires the financial resources to compensate the county for defense-counsel fees associated with his conviction, he ought to be required to do so." *Id.* (Keller, P.J., concurring). Presiding Judge Keller suggested that "[t]he legislature could amend the statute." *Id.* The Legislature did. In 2017, via Senate Bill 527, the Legislature created Article 26.05(g-1). *See* Act of May 28, 2017, 85th Leg., R.S., ch. 554, § 1, 2017 Tex. Gen. Laws 1530, 1530 (current version at TEX. CODE CRIM. PROC. art. 26.05(g-1) (Supp.)). If a defendant is unable to make full reimbursement of the attorney fees at the time of sentencing, Article 26.05(g-1) gives trial courts jurisdiction to consider the defendant's ability to make reimbursements for the entirety of their sentences:

---

[16]Not in the sense of the last statute bearing on attorney fee reimbursements and efforts to avoid them (there are others), but in the sense of the last statute we will discuss.

16

> *At any time* during a defendant's sentence of confinement or period of community supervision, the judge, after providing written notice to the defendant and an opportunity for the defendant to present information relevant to the defendant's ability to pay, may order a defendant . . . to pay any unpaid portion of the ["the actual costs, including any expenses and costs, paid by the county for the legal services provided by an appointed attorney"] . . . if the judge determines that the defendant has the financial resources to pay the additional portion.

TEX. CODE CRIM. PROC. ANN. art. 26.05(g-1)(2) (quoting TEX. CODE CRIM. PROC. ANN. art. 26.05(g)(1)) (emphasis added).

All of this to say that the determination of indigency regarding the ability to reimburse the costs of appointed counsel occurs in the criminal proceedings, but not only in the criminal proceedings.[17]  Given the multiple avenues for addressing the matter, it bears noting that "[i]f a party chooses to challenge the imposition of court costs through a direct appeal rather than through an Article 103.008 hearing or a civil lawsuit, that party risks presenting an insufficient record on appeal and leaving an appellate court unable to properly evaluate that claim."  *London*, 490 S.W.3d at 509.

## III.    Standard of Review:  The *Johnson* "a Basis" Test

We review a challenge to an order calling for the reimbursement of attorney fees under the *Johnson* "a basis" test:  "[W]hen a specific amount of court costs is written in the judgment, an appellate court errs when it deletes the specific amount if there is a basis for the cost."  *Johnson*, 423 S.W.3d at 389.  What, then, is "a basis"?

---

[17]*See* TEX. CODE CRIM. PROC. ANN. arts. 26.05(g-1), 43.035(a), art. 103.008 (Supp.); *Harrell*, 286 S.W.3d at 320 ("The determination of indigency and the taxing of costs occurred as part of the two criminal cases against him."); *In re Guerrero*, 710 S.W.3d 798, 802 (Tex. Crim. App. 2025) (orig. proceeding); *London*, 490 S.W.3d at 508; *Cruz*, 698 S.W.3d at 269.

A bill of costs, standing alone, can be "a basis." *See id.* at 395–96. It was in *Johnson*. *Id.*

In *Johnson*, the trial court's judgment ordered that Johnson pay $234.00 in court costs. *Id.* at 387. There was no bill of costs in the original appellate record, but a bill of costs was provided, via a supplemental record, while the appeal was pending. *Id.* at 388, 393. Johnson "argue[d] that Article 103.001 of the Texas Code of Criminal Procedure creates an evidentiary-sufficiency requirement that a bill of costs must be present in the appellate record to support a specific amount of court costs or the specific amount of costs must be stricken from the judgment." *Id.* at 394.[18] The Court of Criminal Appeals rejected that argument. *Id.* ("we disagree"). The Court of Criminal Appeals held that, via Article 103.001, the Legislature "intended to prevent a defendant from *paying* unsubstantiated court costs." *Id.* at 395 (emphasis added). The Legislature accomplished this end by addressing "when a cost can be *collected* by an agent of the State." *Id.* (emphasis added). "Article 103.003 authorizes designated government agents to collect only money that is *payable*." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 103.003) (emphasis added). This protection regarding *collection*, however, does not make a bill of costs an evidentiary prerequisite to a sustainable *assessment* of court costs. *Id.* at 394–95. The court considered in *Johnson* the separate statutory avenue for challenging costs as "additional evidence" supporting this conclusion. *Id.* at 395 (citing TEX. CODE CRIM. PROC. ANN. art. 103.008).

---

[18]Teague does not cite Article 103.001, nor does he contend that he was not provided with a bill of costs containing the sum for the attorney fee reimbursement.

> This separate procedural avenue would be superfluous if the presence of a bill of costs in the record were an evidentiary prerequisite to sustaining assessed court costs because appellate courts could always resolve court-costs claims before a case is finally disposed of, which is a situation that Article 103.008 does not contemplate.

*Id.*[19]

Thus, after reviewing the law, reviewing the judgment was straightforward: reviewing the judgment for "a basis" supporting $234.00 in court costs came down to comparing the judgment to the bill of costs, which also had $234.00 in court costs. *Id.* at 395–96. That is the context for Johnson's statement that, while a bill of costs is not required to perform the "a basis" review, "it is the most expedient, and therefore, preferable method." *Id.* at 396.

But it may not always be so expedient. *Johnson* left open the possibility that, once challenged, a bill of costs may not be sufficient: "Absent a challenge to a specific cost or basis for the assessment of that cost, a bill of costs is sufficient." *Id.*

For further understanding of *Johnson*, we turn to the court's discussion distinguishing "a basis" review from evidentiary sufficiency review: "[E]videntiary-sufficiency analysis is derived from due-process principles and requires that a trial record contain sufficient evidentiary proof of a defendant's *guilt* before a criminal *conviction* will be sustained." *Id.* at 389 (emphasis added). In contrast, "court costs are not part of the guilt or sentence of a criminal defendant, nor must they be proven at trial; rather, they are 'a nonpunitive recoupment of the costs of judicial

---

[19]*Dulin* has since provided an example of a court cost claim that could only arise after final disposition of a case. *Dulin*, 620 S.W.3d at 130, 133. The statutory time payment fee is "premature" unless "more than [thirty] days after the issuance of the appellate mandate, the defendant has failed to completely pay any fine, court costs, or restitution that he owes." *Id.* at 133. Say that a trial court complies with the timing as set forth in *Dulin* but miscalculates the amount of the fee. Appeal from the judgment of conviction would not be available to challenge such an error; the error arose after appeal from the judgment of conviction was over.

resources expended in connection with the trial of the case.'" *Id.* at 390 (quoting *Armstrong*, 340 S.W.3d at 767); *see Cruz*, 698 S.W.3d at 269. For purposes of whether to use "a basis" review, *Johnson* placed reimbursement of court-appointed attorney fees under the umbrella of court costs. *Johnson*, 423 S.W.3d at 390 (holding that a claim that "there was no basis in the record to support the trial court's determination that the appellant had financial resources and, as a result, the ability to pay at least a portion of the cost of his defense" was a claim "challenging the imposition of costs").[20] Hence, "a basis" review is less onerous than evidentiary-sufficiency review: "[W]e review the assessment of court costs on appeal to determine if there is a basis for the cost, not to determine if there was sufficient evidence offered at trial to prove each cost, and traditional *Jackson* evidentiary-sufficiency principles do not apply." *Id.* Again, "a basis" review can be as straightforward as comparing the judgment to the bill of costs. *See id.* at 395–96. It may not always be that expedient, but that benchmark cautions against making review much more searing than that. *See id.*

We further understand *Johnson* from its discussion of what makes review of cost-reimbursement orders cognizable on direct appeal of the criminal judgment. Cost-reimbursement orders in final judgments are ripe for appellate review even without an assertion that the State has attempted to collect on such costs. *Id.* at 391 (citing *Harrell*, 286 S.W.3d 315).[21] A claim challenging costs included in a trial court's judgment may be made for the first

---

[20]Consequently, the statutory revision since *Johnson* does not alter our use of "a basis" review. *See Johnson*, 423 S.W.3d at 389.

[21]There is no assertion here that the State has attempted to collect on the attorney fee reimbursement included in the trial court's order.

time on appeal where the appellant did not have an opportunity to object "at trial" or "in open court." *Id.* at 390–91.[22]

[22]Even preservation warrants scrutiny here. There is a reason for the discussion above regarding timestamps and multiple versions of the bill of costs on the day of sentencing. *London* held, "an appellant may generally challenge the imposition of even mandatory court costs for the first time on direct appeal when those costs are not imposed in open court *and* the judgment does not contain an itemization of the imposed court costs." *London*, 490 S.W.3d at 507 (citing *Johnson*, 423 S.W.3d at 390–91) (emphasis added). The facts here satisfy one of those requirements but not both: the attorney fee reimbursement was not imposed in open court, but the judgment does contain an itemization of the reimbursement.

"Preservation is a systemic requirement. A first-tier appellate court may not reverse a judgment *of conviction* without first addressing any issue of error preservation." *Williams v. State*, 707 S.W.3d 233, 247 (Tex. Crim. App. 2024) (footnote omitted) (citation omitted) (citing *Darcy v. State*, 488 S.W.3d 325, 327–38 (Tex. Crim. App. 2016)) (emphasis added); *see In re E.R.C.*, 496 S.W.3d 270, 276 (Tex. App.—Texarkana 2016, pet. denied). "This is true regardless of whether the issue is raised by either of the parties." *Darcy*, 488 S.W.3d at 328. "Ordinarily, a court of appeals should review preservation of error on its own motion, but if it does not do so expressly, this Court can and should do so when confronted with a preservation question." *Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009) (footnote omitted) (citation omitted). Here, though, we are not reviewing a conviction. *See Johnson*, 423 S.W.3d at 389.

There is a specific body of law regarding objections to court costs. *See id.* at 390–91. In general:

> The requirement that complaints be raised in the trial court (1) ensures that the trial court will have an opportunity to prevent or correct errors, thereby eliminating the need for a costly and time-consuming appeal and retrial; (2) guarantees that opposing counsel will have a fair opportunity to respond to complaints; and (3) promotes the orderly and effective presentation of the case to the trier of fact.

*Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006). Regarding costs, "enforcing a procedural-default rule against a defendant who had no opportunity to raise an objection in the trial court does not further any of the policies delineated in *Gillenwaters*." *London*, 490 S.W.3d at 507. "If this case were simply about whether Appellant was required to object to the imposition of court costs when the trial court pronounced sentence, it would be easily decided in Appellant's favor." *Id.*

The various bills of costs were provided on the day of sentencing, but there is no timestamp on the reporter's record of the sentencing hearing. Consequently, the timing of when those documents were prepared as compared to the hearing is a matter of inference. Teague would have known at the start of the sentencing hearing that his finances had changed: he had neither a job nor income when he requested appointed counsel, but he had obtained a job and worked for approximately two years since. The presumption of indigence tilts these circumstances against any conclusion that Teague was put on notice, before the hearing, that the trial court would revisit the issue in open court. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p). On these circumstances, and taking the statements in *London* as a whole, we find that Teague may raise this issue without objection in the trial court.

21

## IV. Analysis

The inquiry before the trial court was whether Teague was "able to pay" $1,678.75 when the trial court ordered reimbursement in that amount. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g); *Cates*, 402 S.W.3d at 251. The inquiry before us is whether there is "a basis" for the trial court's ruling. *See Johnson*, 423 S.W.3d at 389. For reasons set forth below, we find that "a basis" of ability does not require proof of cash on hand in the dollar amount of the reimbursement ordered.[23] We affirm.[24]

When the trial court assessed Teague's ability to repay $1,678.75, Teague had pled guilty to possession of child pornography with intent to promote. That is relevant to Teague's credibility concerning his finances. *See* TEX. R. EVID. 609(a)(1) ("Evidence of a criminal conviction offered to attack a witness's character for truthfulness *must* be admitted if . . . the crime was a felony or involved moral turpitude . . . ." (emphasis added)). Consequently, we decline to apply the "a basis" test in a manner that would turn on whether Teague is willing to admit that he has at his disposal $1,678.75, to the penny, that could be collected from him without any particular inconvenience to him. The trial court was not required to find that Teague was willing to pay. *See Cates*, 402 S.W.3d at 251 ("able to pay"). Nor was the trial court required to count on Teague being forthcoming about his finances. *See* TEX. R. EVID. 609(a)(1).

---

[23]A Tyler court of appeals' decision has addressed the "a basis" standard of review, but in that case, the State conceded the point. *See Schumann v. State*, No. 12-23-00068-CR, 2023 WL 8659249, at *3 (Tex. App.—Tyler Dec. 14, 2023, no pet.) (mem. op., not designated for publication) ("[a]s the State acknowledges"). Here, by contrast, the State contends that "[t]he court's assessment of attorney's fees is supported by the record."

[24]The statutory discussion set forth herein is in furtherance of informing the application of *Cates* and *Johnson*, especially given statutory changes since those decisions. There is very much merit in the first-principles statutory review by the concurring opinion of Justice van Cleef herein.

Here, Article 26.04(p)'s "material change" requirement[25] does not present a bar to the trial court's Article 26.05(g) "able to pay" finding,[26] or to our "basis" review of that finding.[27] When he first sought appointed counsel, Teague asserted that he had no job and no income. But by the time of the sentencing hearing, he had a job and had been working for two years. That constitutes "a basis" for a "material change" finding for purposes of Article 26.04(p). *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p); *Johnson*, 423 S.W.3d at 389.[28] Further, Teague asserted indigence at the outset of the case, but then retained counsel appeared. That, too, gave the trial court a basis to believe that Teague had been less-than-forthcoming with his disclosure of the resources available to him. *See Gray*, 744 S.W.2d at 607; *Eaglin*, 710 S.W.3d at 850–51. That too constitutes a basis for a material change finding. *See Eaglin*, 710 S.W.3d at 850–51.

We further decline to apply the "a basis" test in a manner that uses the trial court's decision to afford Teague appellate counsel against the trial court's reimbursement decision. Teague could be indigent for one but not the other. *See McFatridge*, 309 S.W.3d at 6; *Dieken v. State*, 432 S.W.3d 444, 449 (Tex. App.—San Antonio 2014, no pet.).[29] In addition, given the statutory scheme discussed above, the trial court's decision to grant Teague appointed counsel to

---

[25]TEX. CODE CRIM. PROC. ANN. art. 26.04(p).

[26]TEX. CODE CRIM. PROC. ANN. art. 26.05(g).

[27]The Court of Criminal Appeals in *Cates* considered Article 26.04(p) when conducting the Article 26.05(g) analysis. *Cates*, 402 S.W.3d at 251–52.

[28]We assume without deciding that the trial court's appointment of trial counsel was based on indigency. As noted above, the trial court did not circle "indigent" when providing counsel to Teague.

[29]"[T]he trial court's order appointing appellate counsel, signed the same day as the judgment, is not inconsistent with the ordered attorney's fees; the trial court could have found [Defendant] was able to pay $524.50 in trial attorney's fees but unable to pay attorney's fees to appeal." *Dieken*, 432 S.W.3d at 449.

23

appeal his sentence may be just as much, if not more, about bringing Teague's criminal case to final conclusion. *When making the appointment decision*, the trial court faces different considerations than when assessing reimbursement after appointment. *Whitehead*, 130 S.W.3d at 875–76. This is because of the greater importance of the criminal case as compared to reimbursement matters. *See id.* It is better to avoid the "risk that truly indigent defendants would be deprived of counsel," given that "the disadvantages of erroneously ruling in the defendant's favor are *relatively* innocuous." *Id.* (emphasis added).

> Erroneously finding the defendant indigent would not affect underlying substantive determinations . . . . The question of indigence is subject to reconsideration if the defendant's financial status changes, and, at least in the case of appointed counsel, the defendant can be required to reimburse the cost of legal services if it is later determined that he is able to do so.

*Id.* (footnote omitted) (citations omitted). Thus, the trial court could have reasonably determined that the better course would be to appoint counsel so that the case may proceed, knowing that reimbursement and financial hardship could be taken up separately, and later. *See id.*; TEX. CODE CRIM. PROC. ANN. arts. 26.05(g-1), 43.035(a), 103.008.[30] The time demands placed on trial courts drive this point home. By statute, trial courts "shall appoint counsel as soon as possible" after receipt of a request for counsel. TEX. CODE CRIM. PROC. ANN. art. 1.051(c) (Supp.). The Legislature did not leave "as soon as possible" open-ended. The appointment must be made by "the end of the third working day after" the application in counties "with a population of less than 250,000[,]" or by "the end of the first working day after" the application

---

[30]This dynamic could also have been at work in the trial court's decision to appoint trial counsel. *See* TEX. CODE CRIM. PROC. ANN. arts. 26.05(g-1), 43.035(a), 103.008; *Whitehead*, 130 S.W.3d at 876. Teague asserts that the "material change" must have occurred in the relatively narrow window between the January 3, 2024, appointment of counsel and the October 7, 2024, judgment. Even if that is the controlling window, Teague's income during that window would constitute a material change.

24

in counties with a greater population. TEX. CODE CRIM. PROC. ANN. art. 1.051(c)(1)–(2). This leaves precious little time, if any, for the trial court to investigate claims of indigence when making the appointment. But this short timeframe is in keeping with the rights at stake regarding appointment. *See Whitehead*, 130 S.W.3d at 876.[31]

No reimbursement assessment could ever be upheld if the possibility of collection were deemed to cross the *Cates* line of "speculation about possible future resources." *Cates*, 402 S.W.3d at 252. *Johnson* recognized the difference between assessment of costs and collection of costs. *Johnson*, 423 S.W.3d at 394. Since Teague is apparently unwilling to reimburse Gregg County for the costs of providing him with appointed trial counsel, it may well be that the various collection avenues above may be pursued. *See* TEX. GOV'T CODE ANN. § 501.014(e) (Supp.), § 508.221; TEX. CODE CRIM. PROC. ANN. art. 42.22 (Supp.). Those collection efforts may be tempered by Article 43.035(a). *See* TEX. CODE CRIM. PROC. ANN. art. 43.035(a). But those are collection matters.

Likewise, the prospect of any reimbursement order being upheld would be dim, at best, if a defendant's capability of making a reimbursement required proof of cash on hand in the amount of the reimbursement. Even if Teague directed his paycheck to matters he deemed more important, while leaving the taxpayers of Gregg County to pay for his trial attorney, that does not preclude the trial court from finding him capable of making the reimbursement. *See Cardona v.*

---

[31]Article 1.051(c) has contained timing demands since 2001. *See* Act of May 24, 2001, R.S., 77th Leg., ch. 906, § 2, 2001 Tex. Gen. Laws 1800, 1800 (amended 2015) (current version at TEX. CODE CRIM. PROC. art. 1.051(c)(1)–(2)). The Legislature would have been aware of those demands, and the practical results of those demands, when making modifications to the statutory scheme. *See, e.g.*, Act of May 28, 2017, 85th Leg., R.S., ch. 554, § 1, 2017 Tex. Gen. Laws 1530, 1530 (current version at TEX. CODE CRIM. PROC. art. 26.05(g-1)); TEX. CODE CRIM. PROC. ANN. art. 43.035 (Supp.).

*Marshall*, 635 S.W.2d 741, 743 (Tex. Crim. App. 1982) (orig. proceeding) ("May a person transfer his assets while awaiting trial, after alleging indigency, so that he may make applications for appointment of counsel, a free transcript, and a free statement of facts? We think not. Were this Court to hold otherwise, the counties of this State would be overburdened with the task of providing these services to truly non-indigent persons."). There would seem to be little point to the Legislature's statutes regarding collection of assessed reimbursements if the only way reimbursement could be assessed is if the defendant showed up to the sentencing hearing with cash-on-hand in the full amount of the reimbursement. *See* TEX. GOV'T CODE ANN. §§ 501.014(e), 508.221; TEX. CODE CRIM. PROC. ANN. arts. 42.22, 43.035(a).

In *Johnson*, a bill of costs sufficed to provide "a basis." *Johnson*, 423 S.W.3d at 395–96. The record before us contains a bill of costs. The record shows that Teague sought appointed counsel based on an attestation of no job and no income, but thereafter he acquired both. The exact amount of his income is not shown in this record, but it was sometimes enough to impact his wife's Social Security benefits. What is more, the appearance of retained counsel following Teague's attestation of indigency calls into doubt Teague's forthrightness. Taken together, that provides "a basis" for the trial court to conclude that as of October 7, 2024, Teague was able to reimburse Gregg County in the amount of $1,678.75.

We affirm.


Jeff Rambin
Justice

26

CONCURRING OPINION

I respectfully concur with the main opinion of Justice Rambin.

The parties to this appeal squarely task us to decide whether a defendant determined to be indigent for purposes of appointment of counsel may be assessed and ordered to pay all or part of his appointed attorney fees at a future date. Teague asserts that "[t]he trial court erred in assessing these fees without evidence to show Appellant's ability to pay had materially changed." My colleagues have written separately on this issue and fully reviewed relevant cases. I begin and end my review with primary statutory sources and conclude that Teague's indigent status remains undisturbed, that he can nonetheless be ordered to post-pay (or "reimburse") all or part of his trial counsel's fees, and that the record reveals no current, specific obligation to pay. I join in affirming the trial court, but for the following reasons.

The Sixth Amendment to the United States Constitution guarantees the right to the reasonably effective assistance of counsel in criminal prosecutions. U.S. CONST. amend. VI; *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)); *see also* TEX. CONST. art. I, § 10. If indigent, the defendant is entitled to appointment of counsel. TEX. CODE CRIM. PROC. ANN. art. 1.051(a) (Supp.), art. 1.051(c). "'[I]ndigent' means a person who is not financially able to employ counsel." *Id*. at (b). A criminal defendant who avers that he is "without means to employ counsel of [his] own choosing" may request appointment of counsel. TEX. CODE CRIM. PROC. ANN. art. 26.04(o); *see id.* at 26.04(n) (Supp.).

27

That was done. There is no question that Teague requested and received attorney representation at every step of his trial and appeal. His statutory and constitutional rights to representation have been observed.

A defendant "is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." TEX. CODE CRIM PROC. ANN. art. 26.04(p). However, "[a] defendant can be found indigent for one purpose without being found indigent for the other," *McFatridge*, 309 S.W.3d at 6; so, a person found indigent for one purpose may still be required to pay for other expenses or costs—"indigency" does not necessarily preclude some payment. In my view, and in the absence of a contrary finding by the trial court, Teague is still indigent for purposes of appointment of counsel, and, in fact, the trial court appointed counsel for this appeal.[32]

Article 42.15(a) of the Texas Code of Criminal Procedure states, "When the defendant is fined," as Teague was, "*the judgment shall be* that the defendant pay the amount of the fine and *all costs* to the state." TEX. CODE CRIM. PROC. ANN. art. 42.15(a) (Supp.) (emphasis added).[33]

---

[32]The parties have not provided Gregg County's plan for appointment of counsel. Anecdotally, since it is in this Court's district, I am aware that the plan contains definitions and financial thresholds for appointment of counsel, including the trial court's general knowledge of the cost of retained counsel. Neither party argued them in this appeal. A "*material* change" to justify a change in indigency status is, therefore, an elusive concept, and an unnecessary one for us to consider since the trial court did not revoke Teague's indigent status, there is no issue of appointment of counsel, and, to the contrary, Teague has appointed appellate counsel. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (emphasis added). Article 26.04, entitled "Procedures for Appointment of Counsel," contains that test. TEX. CODE CRIM. PROC. ANN. art. 26.04(p). Article 26.04 does not address post-payment, or "reimbursement," for appointed counsel's services; but rather Article 26.05 does. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g).

[33]The Texas Court of Criminal Appeals has stated that Article 42.15 applies in cases of "fine only" punishment, and all other cases fall within Article 42.16 of the Texas Code of Criminal Procedure. *Johnson*, 423 S.W.3d at 389; *see* TEX. CODE CRIM. PROC. ANN. art. 42.15 (Supp.). However, the Texas Court of Criminal Appeals has also analyzed costs imposed under Article 42.15 after a defendant was sentenced to incarceration and a fine. *See Cruz*, 698 S.W.3d 265. Numerous intermediate appellate courts have recently done the same. Whichever is correct, even

That was done.  The amount of attorney fees appears in the judgment and the associated bill of costs.

Teague pled guilty to a felony offense and received a prison sentence with a fine.  Article 42.15(a-1)(1), entitled "Fines and Costs," states,

> "If the court determines that the defendant does not have sufficient resources or income to *immediately* pay all or part of the fine and costs, the court *shall* determine whether the fine and costs should be:
>
> > (1) . . . required to be paid at some later date or in a specified portion at designated intervals[.]"

Tex. Code Crim. Proc. Ann. art. 42.15(a-1)(1) (Supp.) (emphasis added).[34]  Immediate payment was not demanded.  The judgment provides,

> *Upon release from confinement*, the Court ORDERS Defendant to proceed without unnecessary delay to the District Clerk's office, or any other office designated by the Court or the Court's designee, to *pay or to make arrangements to pay* any fines, court costs, reimbursement fees, and restitution due.

(Emphasis added).  Teague was sentenced to serve eight years in confinement, and nothing in the record indicates he has been released or otherwise avoided the imposition of his sentence.  Similarly, the record does not demonstrate that any order for withdrawal of funds or other levy has taken place.[35]  The timing is uncertain since his release on community supervision is

---

Article 42.16 states that the trial court "shall adjudge the costs against the defendant, and order the collection thereof as in other cases."  Tex. Code Crim. Proc. Ann. art. 42.16.

[34]The trial court did not expressly inquire about ability-to-pay on the record.  However, Teague did not request an ability-to-pay inquiry nor object to the lack of one and therefore forfeited that complaint on appeal.  *See Cruz*, 698 S.W.3d at 269, 271.  Even so, he may still challenge the costs, but not the lack of an inquiry.  *See Johnson*, 423 S.W.3d at 394.

[35]The fact that the bill of costs contains an attorney fee does not alter this analysis.  The bill of costs does not specify a timeframe for payment and does not contradict the judgment.  Two sister courts recently addressed this question and reached the same conclusion.  *See Jones v. State*, No. 14-24-00474-CR, 2025 WL 2446555, at *6 (Tex. App.—

discretionary, but what is certain is that the trial court did not direct that payment to occur immediately. Teague has not challenged that order.

Having decided that payment will not be required now, the trial court also satisfied its obligations under Article 26.05(g), which states,

> If the judge determines that [an indigent] defendant has financial resources that enable the defendant to *offset in part or in whole the costs of the legal services provided* to the defendant in accordance with Article 1.051(c) or (d)[ entitled, "Right to Representation by Counsel"], including any expenses and costs, *the judge shall order* the defendant to pay during the pendency of the charges or, *if convicted, as a reimbursement fee the amount that the judge finds the defendant is able to pay.*

TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (emphasis added). That was also done. The judgment contains the following finding:

> **Attorney Fee's**
> The Court FINDS that Defendant has financial resources that enable Defendant to offset in part or in whole the cost of the legal services provided to Defendant. Therefore, the Court ORDERS Defendant to pay $1678.75 as court costs to the County.
> Tex. Code Crim. Proc. art. 26.05(g).

We review a trial court's directive requiring the payment of a fine and court costs for an abuse of discretion. *Sloan v. State*, 676 S.W.3d 240, 241 (Tex. App.—Tyler 2023, no pet.); *see also Carradine v. State*, No. 03-24-00012-CR, 2024 WL 3731846, *8 (Tex. App.—Austin, Aug. 9, 2024, no pet.) (mem. op., not designated for publication). In addition, we review the

---

Houston [14th Dist.] Aug. 26, 2025, pet. ref'd) (not designated for publication) (concluding the bill of cost and judgment did not conflict); *Richardson v. State*, Nos. 02-24-00237-CR & 02-24-00238-CR, 2026 WL 253462, at *20 (Tex. App.—Fort Worth Jan. 30, 2026, no pet.) (mem. op., not designated for publication) (same conclusion).

Nonetheless, there is no time limit on a defendant's ability to contest payment on grounds of undue hardship. *Cruz*, 698 S.W.3d at 269 (citing TEX. CODE CRIM. PROC. ANN. art. 43.035(a)); *see also* TEX. CODE CRIM. PROC. ANN. art. 26.05(g-1)(3) (Supp.) (defendant ordered to pay under Article 26.05(g-1) can demonstrate inability to pay).

assessment of costs to determine whether there is a basis for the cost; we do not apply an evidentiary-sufficiency review. *Johnson*, 423 S.W.3d at 390; *see Cardenas v. State*, 423 S.W.3d 396, 398 (Tex. Crim. App. 2014). No party to this appeal challenges the amount of attorney fees, and "a basis" for the attorney fee clearly appears in the attorney's certificate and detailed billing and the trial court's order for payment. However, the trial court's "finding" is the issue: whether Teague "has financial resources that enable [him] to offset" all or part of his appointed attorney's fee. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g). I review the record for any evidence to support the finding, because a trial court errs if it orders reimbursement of court-appointed attorney fees without record evidence demonstrating a defendant's ability to offset the costs of legal services. *See Mayer,* 309 S.W.3d at 556. As detailed by Justice Rambin in his main opinion, the record reveals that Teague obtained employment during the pendency of the case. Also, the trial judge was able to consider Teague's demeanor in ways we cannot. Finally, and since the trial court's determination at this stage had nothing to do with the Article 26.04 factors for determining the right to have appointed representation, I note that at the time of the judgment, the trial court was aware of the length of sentence—eight years, or approximately $209.00 per year or roughly $4.00 per week—which the trial court could reasonably believe was a small enough amount, and a long enough time, to reimburse the attorney fee.

To further address the matter of assessment raised by Teague, the terms "assess," "impose," "direct," and a requirement for "payment" seem to be fluidly substituted—in case opinions, statutes, and briefs—and there is good reason to not do so in this context. *See* TEX. CODE CRIM. PROC. ANN. art. 103.003 (Supp.). The calculation, or "assessment," of allowable

31

attorney fees is necessary so that appointed counsel is compensated by the government upon conclusion of the representation, and is also necessary to later implement Article 26.05(g)(1)–(2). *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g)(1)–(2). I recognize that it has been this Court's longstanding practice to strike attorney fee assessments in judgments and bills of costs when no express finding to contradict "indigent" status appears in the record, and I have authored opinions doing so myself. However, tasked by the parties and the record to examine Article 26.05 in detail, and in order to fully address Teague's claim, I must also consider the effect of Article 26.05(g-1)(1)–(2), that resulted from the passage of Senate Bill 527 almost nine years ago and is discussed above by Justice Rambin, in his main opinion. The judiciary "must respect policy-laden statutes as written and give wide leeway to the innumerable trade-offs reflected therein." *Miles v. Tex. Cent. R.R. & Infrastructure, Inc.*, 647 S.W.3d 613, 628–29 (Tex. 2022) (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 462 (Tex. 2009) (Willett, J., concurring)). Article 26.05(g)(1) begins, "[t]his subsection applies only to a defendant who at the time of sentencing to confinement . . . did *not* have the financial resources to pay the *maximum* amount described by Subsection (g)(1) or (2)." TEX. CODE CRIM. PROC. ANN. art. 26.05(g-1) (emphasis added). The maximum amount is the actual, full amount paid to *appointed* attorney services provided to an indigent defendant whose fees were calculated under Article 26.05(g)(1) or (2).

Article 26.05, subsections (g) and (g-1), stand for the proposition that a defendant who received court-appointed counsel may be required to reimburse the county for attorney fees

under specified circumstances and at a future date.[36]   Article 26.05(g-1) provides that upon

notice and an opportunity to present information during the punishment term, a trial court may

order the defendant to pay the *full* subsection (g)(1) or (2) amount.   None of that has occurred,

and it may never occur.   Even so, Article 26.05(g-1) and its subsections make clear that the

government may, until the sentence is fully discharged, seek payment of all or part of the

attorney fees from a defendant who had court-appointed counsel.   This conclusion is inconsistent

with the longstanding and widespread practice of striking attorney fees from judgments in direct

appeals.[37]

---

[36]This conclusion conflicts with *Cates*, 402 S.W.3d at 251, with the exception of Judge Keller's concurrence.   It appears that Senate Bill 527 was a direct legislative response to part of the *Cates* holding.   Also, *Cates* was decided years prior to the passage of Senate Bill 527.

[37]I do not find Article 26.05(g-1) to be ambiguous.   Even so, "to the extent that a statute's history provides context for construing its text, we can consult it regardless of whether the statutory text is ambiguous."   *Nicholson v. State*, 682 S.W.3d 238, 250 n.11 (Tex. Crim. App. 2024) (Yeary, J., concurring) (citing *Ex parte Moon*, 667 S.W.3d 796, 803 (Tex. Crim. App. 2023)).   My belief is confirmed by Senate Bill 527's Senate Committee report which states,

> S.B. 527 enables a court to order a defendant to pay all or part of the cost of legal services at any time during the defendant's confinement, placement on community supervision, or period of deferred adjudication.   S.B. 527 allows local governments to recover the cost of legal services provided if a defendant acquires sufficient financial resources subsequent to sentencing.
> (Original Author's / Sponsor's Statement of Intent).

LEGIS. REFERENCE LIBR. OF TEX., SENATE RESEARCH CENTER, *Bill Analysis*, Tex. S.B. 527, 85th Leg., R.S. (2017) https://lrl.texas.gov/legis/billsearch/BillDetails.cfm?legsession=85-0&billTypeDetail=SB&billNumberDetail=527&billsuffixDetail= (follow Committee Report (Senate Research Center) hyperlink).   The House also noted that "[Senate Bill] 527 seeks to lighten the burden of the taxpayer by revising provisions relating to compensation of certain appointed counsel."   *Id.* (follow Committee Report (TLC) hyperlink).   Indeed, the problem Senate Bill 527 seeks to solve by amending Article 26.05 is that "the court's authority to order such payment ends with the sentencing of the defendant."   *Id.* (follow Enrolled (Senate Research Center) hyperlink).

It is difficult to imagine how the Legislature could have been more clear in saying that the law should reduce the expense to taxpayers by enabling collection of appointed attorney fees during the entirety of the sentence.

In sum, I conclude that Teague was, and is still, a recipient of appointed counsel and that the trial court did not determine that he was not indigent. Instead, the trial court assessed the actual amount to pay Teague's appointed trial counsel, noted that amount in its judgment, evaluated whether Teague could pay the entire amount immediately and decided not, had an evidentiary basis to determine that Teague was, at the time of sentencing, able to pay "all or part" of his counsel's fees, and ordered that the specifics of payment will be arranged at a future date—as it *shall* do in each particular case. Collection has not commenced. If trouble arises in the future when payment begins, there are avenues for relief from a future inability to pay.

It is unfortunate that my esteemed colleagues and I cannot reach a consensus on the law in this case, but it is not surprising. We have each attempted to span the gap between longstanding practice and Articles 42.15 and 42.16 on one hand, and Articles 26.04 and 26.05(g)–(g-1) on the other, just as the trial courts in our district do, against a backdrop of cases that variously pre- and post-date a major statutory change. My conclusions rely heavily on the Legislature's addition of Article 26.05(g-1) and on the other legislation cited in this concurrence.

Accordingly, I find no error and join Justice Rambin's main opinion in affirming the trial court's judgment, for the reasons stated in this concurrence.


Charles van Cleef
Justice

DISSENTING OPINION

For the reasons below, I respectfully dissent from the main opinion.

Teague was arrested on June 7, 2022. The record reflects that Teague was initially represented by attorney Brandon T. Winn through the arraignment process. On June 13, 2022, Teague completed and presented to the trial court a request for appointment of counsel. In his request, Teague indicated that he was without means to employ an attorney and requested that the trial court appoint counsel for him. Teague stated that he did not have an income but that he was seeking employment. Teague's outstanding financial obligations included, among other expenses, repayment of a $430.00 loan, a monthly car payment in the amount of $451.00, and various other monthly expenses such as cable and utilities. Teague attested that his wife did not have an income but indicated that he and his wife owned their home.

On January 3, 2024, the trial court reviewed and considered the information contained in Teague's request for a court-appointed attorney. Determining that he was unable to afford his own counsel, the trial court appointed Todd Smith as counsel to represent Teague in the trial of this matter.[38] Smith represented Teague for the remainder of the trial court proceedings.

During an open plea hearing on August 29, Teague's wife, Claudia, was called as a witness by Teague's appointed counsel. Teague's counsel asked Claudia several questions regarding her health, which, according to Claudia, was not good. Claudia testified that she received monthly social security income in the amount of $370.00, but that if Teague "makes too

_____

[38]Because counsel may be appointed only when indigency is shown, it is presumed that the trial court determined that Teague was indigent before appointing counsel. *See Schumann*, 2023 WL 8659249, at *2 (citing TEX. CODE CRIM. PROC. ANN. art. 26.04(a); *Gray*, 744 S.W.2d at 607).

35

much" income in a month, her payment dropped to $100.00 a month. Claudia explained that because they had a $450.00 car payment every month, her social security payment was not enough to cover their additional expenses, such as their water and light bills. Claudia also said that Teague handled the household finances, picked up her medications, took care of her on a daily basis, and even dressed her. Furthermore, she testified that Teague had several medical issues, including repeated seizures for which he was taking medication. In addition, Claudia referred to Teague's employment at a convenience store, and that the wages he received from working there covered the extra health expenses, but she made no mention of the amount of Teague's income. During the plea hearing, the trial court did not make a finding as to Teague's financial resources or his ability to pay his attorney's fees.

On October 7, 2024, the trial court held a sentencing hearing. Teague was sentenced to eight years' confinement in prison. When Teague's trial counsel was discussing the appellate bond during the hearing, he informed the trial court, "Judge, my client's doesn't [sic] have means." The trial court responded, "I understand." The trial court then set Teague's appellate bond and appointed Teague counsel to represent him on appeal. Even so, the trial court made a finding in its judgment providing, "The [c]ourt Finds that Defendant has financial resources that enable Defendant to offset in part or in whole the cost of the legal services provided to Defendant. Therefore, the [c]ourt ORDERS Defendant to pay $1,678.75 as court costs to the County. Tex. Code Crim. Proc. art. 26.05(g)."

Teague contends that the trial court erred in assessing attorney fees without evidence to show Teague's ability to pay had materially changed. As pointed out in the main opinion, when

36

a trial court determines that a defendant is indigent, he "is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." TEX. CODE CRIM. PROC. ANN. art. 26.04(p).

> Under Article 26.05(g) of the Texas Code of Criminal Procedure, a trial court has the authority to order the reimbursement of a court-appointed attorney fees only if "the court determines that a defendant has financial resources that enable defendant to offset in part or in whole the costs of the legal services provided . . . including any expenses and costs."

*Junell v. State*, 607 S.W.3d 410, 418 (Tex. App.—Texarkana 2020, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 26.05(g)). "'[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees' of legal services provided." *Id.* (alteration in original) (quoting *Armstrong*, 340 S.W.3d at 765–66 (quoting *Mayer*, 309 S.W.3d at 556 (Tex. Crim. App. 2010))). "[T]he record must reflect some factual basis to support the determination that [Teague] was capable of paying all or some of his attorney's fees at the time of the judgment." *Briceno v. State*, 675 S.W.3d 87, 98 (Tex. App.—Waco 2023, no pet.) (citing *Barrera v. State*, 291 S.W.3d 515, 518 (Tex. App.—Amarillo [Panel Op.] 2009, no pet.) (per curiam)).

The trial court made the finding in its judgment that Teague had the ability to pay attorney fees in part or in whole. However, I believe such a finding is unsupported by any factual basis in the record. Teague was appointed counsel in January of 2024. Claudia's testimony seven months later did not help support the finding that Teague had the financial resources to pay. Although she did mention Teague having a job at a convenience store, the record is not clear as to how long he had the job. Nor was there any mention of how many hours

Teague worked or his rate of pay. Other than Claudia's testimony, the record does not reflect any other information about Teague's financial resources since the trial court initially found him indigent.

As a result, based on this record, I do not believe there is a factual basis to support the trial court's finding. For that reason, I would find there was no basis for the assessment of attorney fees at the time the judgment was entered and would sustain Teague's sole point of error. Furthermore, because it is the proper remedy, I would modify the trial court's judgment and the bill of costs by deleting the assessment of $1,678.75 in attorney fees. *See Schumann*, 2023 WL 8659249, at *6 (citing *Cates*, 402 S.W.3d at 252).

As modified, I would affirm the trial court's judgment.


Scott E. Stevens
Chief Justice


CONCURRING OPINION

I respectfully concur because I believe there was a more direct path to leaving the trial court's judgment in place: I do not believe we should have accepted Teague's brief. I concur for the following reasons.

First, the trial court did not order the taxpayers of Gregg County to pay for Teague's appellate attorney to contest the reimbursement of the cost of Teague's trial counsel (that the taxpayers also provided).

Second, the right to taxpayer-provided appellate counsel is not about a $1,678.75 reimbursement dispute. The Constitution does not compel the taxpayers to pay for Teague's appellate attorney to contest the reimbursement of the cost of trial counsel that the taxpayers also provided. Problems with the *Anders*[39] process, if any, should be addressed head-on rather than rebuking beleaguered court clerks and trial courts for errors regarding court costs that might not be errors after all. *See Bradshaw*, 707 S.W.3d at 418–19.

Before going further, I acknowledge there is an established basis for hearing the appeal as presented. The practice of appointed appellate counsel pressing so-called "nonreversible error" is common and may be growing. *See Nelson v. State*, 729 S.W.3d 374, 379 (Tex. App.—Dallas 2025, no pet.) (en banc). It may be vexing. *See id.* But it is an actual practice rooted in a number of considerations. *Id.* In addition, there is much to be said for avoiding the additional time and expense that would be involved in remanding this case for a brief on whether there is "reversible error," in other words, error impacting the liberty interest.

What follows is why I believe, on balance, the practice should change and should have changed starting with this case. While remanding for a proper *Anders* brief in this case would involve more expense, I believe that, in the long run, doing so would be the "stitch in time that saves nine."

---

[39]*See Anders v. California*, 386 U.S. 738 (1967).

## I.     Who Ordered the Taxpayers to Pay for This?

The taxpayers of Gregg County are paying appellate counsel to fight against Gregg County being reimbursed by Teague for the cost of Teague's taxpayer-provided trial counsel.

I do not see where the trial court ordered this. The record does contain an order appointing appellate counsel. The trial court's certificate of appeal, though, states that this "is <u>not</u> a plea agreement case, and the defendant has the right of appeal *for punishment only*." (Emphasis added). I have added italics to note that, "for punishment only" is handwritten on the form. That is consistent with what was described to Teague by his trial counsel and what was stated by the trial court at the plea hearing: "[I]n punishment [Teague would] have a right to appeal." As noted above, a reimbursement dispute "does not implicate 'the integrity of judicial sentencing proceedings' or 'the criminal adjudicatory process[.]'" *Cruz*, 698 S.W.3d at 269 (alteration in original). Nothing in the record indicates that the trial court appointed counsel for purposes of a reimbursement appeal. Nothing in the record indicates that the trial court approved such an appeal.

The trial court, though, is the only one that could have approved it. *See* TEX. CODE CRIM. PROC. ANN. art. 1.051(d) (Supp.) ("An eligible indigent defendant is entitled to have *the trial court* appoint an attorney to represent him in [a specified list of] appellate and postconviction habeas corpus matters[.]" (emphasis added)). When the trial court appointed appellate counsel for Teague, the trial court was under the impression that counsel would protect Teague's rights regarding punishment.

But Teague's appellate counsel presented a brief about reimbursement, a non-punishment matter. This is not to chastise Teague's counsel.[40] This is a systemic question; as noted above, such briefs from appointed appellate counsel are commonly accepted by appellate courts.[41] In my estimation, however, the dynamics of appointed counsel result in a mismatch between the frequency with which cost and reimbursement issues come up in private pay and court-appointed briefs, especially in the context of *Anders* briefs or circumstances in which an *Anders* brief should have been presented. No matter who is paying the appellate counsel, the defendant's chief concerns, presumably, would be overturning the conviction or reducing the prison sentence. If there is no basis to accomplish either of those via appeal, and the discussion turns to a potential appeal of costs and reimbursements, then it does matter who is paying. A defendant paying an attorney with his own money would have to consider the cost-benefit tradeoff of such an appeal. Tradeoffs are a fact of life, and the Legislature has spoken to them via its statutory

---

[40]Appointment by the trial court brought with it a duty to zealously represent Teague. *See Kelly v. State*, 436 S.W.3d 313, 319 (Tex. Crim. App. 2014) ("competence, commitment and dedication to the interest of the client and with zeal in advocacy upon the client's behalf" (quoting TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.01 cmt. 6)). Here too, there are other considerations. *See In re Schulman*, 252 S.W.3d 403, 407 (Tex. Crim. App. 2008) (orig. proceeding) ("professional and ethical responsibilities as an officer of the court not to burden the judicial system with . . . burdensome time demands"); *Nath v. Tex. Child.'s Hosp.*, 446 S.W.3d 355, 367 (Tex. 2014) ("An attorney has ethical obligations to both his client and to the judicial system as an officer of the court. Though zealous advocacy is expected of an attorney—indeed, it is a professional obligation—the attorney must not permit client desires to supersede the attorney's obligation to maintain confidence in our judicial system." (footnote omitted) (citation omitted)). As discussed *infra*, I believe that attorneys presenting briefs such as the one here are picking up on signals sent by appellate courts. I believe that *the courts* could increase confidence in the judicial system by re-emphasizing the review of liberty interest matters.

[41]*See Nelson*, 729 S.W.3d at 385. Further, counsel might have been encouraged to focus on a cost assessment issue given our Court's practice of sua sponte review of costs with considerable regularity, something I myself have done. *See, e.g.*, *Jennings v. State*, No. 06-23-00155-CR, 2024 WL 1424330, at *1–2 (Tex. App.—Texarkana Apr. 3, 2024, no pet.) (mem. op., not designated for publication) (citing *Mitchell v. State*, 653 S.W.3d 295, 297 (Tex. App.—Texarkana 2022, no pet.). Our court is not alone in that practice. *See Mitchell*, 653 S.W.3d at 297.

scheme. *See, e.g.*, *Harrell*, 286 S.W.3d at 320 (discussing the "cost-benefit tradeoff" balance struck by Section 501.014(e)); TEX. CODE CRIM. PROC. ANN. art. 103.008.

If given my druthers, our Court would reject briefs that present only "nonreversible error."[42] I would do so for the reasons above in light of the nature of *Anders* review.

**II.     Teague Received a Prison Sentence:  *Does this appeal protect his liberty interest?***

By raising a $1,678.75 reimbursement issue, and only a $1,678.75 reimbursement issue, Teague's appellate counsel failed to address the reason Teague was given appellate counsel in the first place.  The purpose of taxpayer-provided appellate counsel is to ensure that the defendant's constitutional *liberty* interest is protected.  *See Ex parte Gonzales*, 945 S.W.2d 830, 836 (Tex. Crim. App. 1997) (orig. proceeding) (quoting *Argersinger v. Hamlin*, 407 U.S. 25, 37–38 (1972) ("[N]o person may be deprived of his liberty who has been denied the assistance of counsel . . . ." (alteration in original)).

The Sixth Amendment right to appointed trial counsel was announced by the United States Supreme Court in *Powell*[43] regarding capital cases, was extended by *Gideon*[44] to state court felony cases, and was extended by *Argersinger*[45] to misdemeanors where the liberty interest is at stake.  As these cases held, the Sixth Amendment right to appointed trial counsel

---

[42]This would be without prejudice to a subsequent brief raising non-liberty interest matters in conjunction with an *Anders* brief.

[43]*See Powell v. Alabama*, 287 U.S. 45, 68–69 (1932).

[44]*See Gideon v. Wainwright*, 372 U.S. 335, 344–45 (1963).

[45]*See Argersinger*, 407 U.S. at 32; *see also* TEX. CODE CRIM. PROC. ANN. art. 26.04 (Supp.).  The Supreme Court later clarified that "the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant *be sentenced* to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." *Scott v. Illinois*, 440 U.S. 367, 373–74 (1979) (emphasis added).

protects the constitutional liberty interest: "Both *Powell* and *Gideon* involved felonies. But their rationale has relevance to any criminal trial, where an accused is deprived of his liberty." *Argersinger*, 407 U.S. at 32.

*Douglas* extended the Sixth Amendment right to appointed counsel to statutory direct appeals.[46] As the Supreme Court later observed in *Penson*, "The need for forceful advocacy does not come to an abrupt halt as the legal proceeding moves from the trial to appellate stage."[47] As can be seen from *Penson*'s citations to *Powell* and *Gideon*, the right to appointed counsel on appeal flows from the same constitutional wellspring as the right to appointed counsel at trial.[48] That wellspring is the liberty interest: "In bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic *loss of liberty*, is unlawful." *Penson*, 488 U.S. at 85 (quoting *Evitts v. Lucey*, 469 U.S. 387, 396 (1985) (emphasis added).

To sum it up: "This Court has held that the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 194 (2008); *see Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020).

---

[46]*Douglas v. People of State of Cal.*, 372 U.S. 353, 356–57 (1963). The court did not announce a constitutional right to appeal, but instead held that if states, by statute, create a right to appeal, then the constitutional right to appointed counsel attaches to that statutory right. *Id.* ("We are dealing only with the first appeal, granted as a matter of right to rich and poor alike [by California statute], from a criminal conviction. . . . [W]here the merits of the one and only appeal an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor." (citations omitted)).

[47]*Penson v. Ohio*, 488 U.S. 75, 85 (1988).

[48]*See id.* at 84 (citing *Gideon*, 372 U.S. at 344; *Powell*, 287 U.S. at 53).

*Anders* is the familiar process for protecting the liberty interest when an appointed appellate counsel determines that any appeal that could be brought regarding the liberty interest would be frivolous. *See Kelly*, 436 S.W.3d at 318.

Teague's appeal, as presented by his taxpayer-provided appellate counsel, has nothing to do with Teague's liberty interest. I would remand for appointment of counsel to present an *Anders* brief. In this respect, I agree with the Tenth Court of Appeal's *Allison* decision:

> [C]ounsel's decision to raise non-reversible error outside the context of *Anders* in this case deprives appellant of his right to be heard by the filing of a pro se response raising "any points that he chooses," and it deprives this Court the opportunity to conduct an independent review of the record.

*Allison v. State*, 609 S.W.3d 624, 628 (Tex. App.—Waco 2020, order) (per curiam), *disp. on merits*, 654 S.W.3d 794, 796 (Tex. App.—Waco 2022, no pet.) (citing *Anders*, 386 U.S. at 744).[49]

What would a brief addressing Teague's liberty interest have looked like, though? Our sister court in Dallas has held that an *Anders* brief requires "an exceptionally detailed account, providing this court a roadmap explaining why, at each turn, there are only frivolous issues to be raised on appeal." *Limauro v. State*, 675 S.W.3d 368, 372 (Tex. App.—Dallas 2023, no pet.). The court praised a brief that "walk[ed] [the court] through each section of the trial." *Id.* The court described *Anders* briefs as "minutely detailing why the client has no shot on appeal." *Id.* The court in *Limauro* stated, "Properly done, an *Anders* brief is an exhaustive endeavor." *Id.* Our Court has not held that *Anders* is that exacting. In my view, *Limauro* overstates what an

---

[49]I am not so sure, though, about *Allison*'s encouragement of appointed counsel to address issues that do not impact the liberty interest. *See Allison*, 609 S.W.3d at 628. I question whether *Allison* gave proper weight to the entire statutory scheme and the multiple avenues for addressing cost and reimbursement issues.

*Anders* brief must contain. *See Kelly*, 436 S.W.3d at 318; *In re Schulman*, 252 S.W.3d at 407; *High v. State*, 573 S.W.2d 807, 812 (Tex. Crim. App. [Panel Op.] 1978).

I believe that we can address the problem by restoring *Anders* to its roots, and by not making more of *Anders* than what it is. *See In re Schulman*, 252 S.W.3d at 406 n.9 ("In Texas, an *Anders* brief need not specifically advance 'arguable' points of error if counsel finds none, but it must provide record references to the facts and procedural history and set out pertinent legal authorities."). Here, for example, an *Anders* brief could have been no more complicated than the brief challenging the reimbursement. The brief would have needed citations to the record, much like in section I of the main opinion above (the reimbursement-specific citations could be omitted, of course). As for potentially arguable issues, the evidence of Teague's guilt was compelling. He pled guilty, and in conjunction therewith, waived his right to appeal matters pertaining to guilt. He was properly admonished regarding the consequences of a guilty plea. There was no question of whether prior convictions could properly be used to enhance his punishment; there were none. Teague's sentence was within the statutory range, and indeed, less than the maximum. Thus, there was no basis to appeal for a lesser sentence. *See State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016); *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006) (orig. proceeding). Likewise, the record available on direct appeal shows no basis to second-guess trial counsel. *See Tanner v. State*, 707 S.W.3d 371, 376 (Tex. Crim. App. 2024) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)); *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007). Presenting a proper *Anders* brief in Teague's case would not have required an exhaustive endeavor.

45

## III.    Conclusion

Time and expense spent on one thing takes away from something else.

The Supreme Court has recognized this in the context of *Anders*: "[C]ritics have claimed that, in setting out the *Anders* procedure, we were oblivious to the problem of scarce resources (with regard to both counsel and courts) and, as a result, crafted a rule that diverts attention from meritorious appeals of indigents and ensures poor representation for all indigents." *Smith v. Robbins*, 528 U.S. 259, 282 n.13 (2000). The Supreme Court acknowledged that "judicial fiat cannot cure scarcity; it merely disguises the symptoms of the disease." *Id.* (quoting A.C. Pritchard, *Auctioning Justice:  Legal and Market Mechanisms for Allocating Criminal Appellate Counsel*, 34 AM. CRIM. L. REV. 1161, 1162 (1997)). The Supreme Court held that "this problem" is for the states to address. *Id.*

In sum, I propose focusing on the liberty interest in cases involving appointed counsel.[50] For every defendant for whom we spend time examining attorney fee reimbursements or other non-liberty matters, there is another defendant hoping to overturn his conviction, or to reduce his sentence. In my view, the liberty interest is of greater importance. *See Douglas*, 372 U.S. at 357 ("the one and only appeal").

---

[50]We have previously held that "appellate courts are authorized to reform judgments and affirm as modified in *Anders* cases involving non-reversible error." *Mitchell*, 653 S.W.3d at 297. That remains true as a matter of what we may do. As a matter of what we must or should do, I will not routinely exercise *Mitchell* authority to raise reimbursement matters sua sponte.

Respectfully then, I concur.

                                          Jeff Rambin
                                          Justice

Date Submitted:     March 18, 2025
Date Decided:       April 20, 2026

Do Not Publish